**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Cedric PARKS, a/k/a Governor Fool, a/k/a Fool, Delano Finch, a/k/a Trouble, Roger Stewart, a/k/a Big Rog, a/k/a Heavy, et al., Defendants–Appellees.**

No. 96–2803.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 27, 1996.

Decided Nov. 20, 1996.

Barry Rand Elden, Chief of Appeals, Ronald Safer (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for U.S.

Sheldon Nagelberg, Chicago, IL, for Cedric Parks.

Marianne Jackson, Chicago, IL, for Delano Finch.

George E. Becker, Chicago, IL, for Clarence Haywood.

Gerald J. Collins, Chicago, IL, for Harold Jackson.

Jeffrey H. Haas, Erica Thompson (argued), People's Law Office, Chicago, IL, for Jeffrey Hatcher.

Robert L. Edwards, Chicago, IL, for Timothy Nettles.

Frank Lipuma, Chicago, IL, for Kevin Williams.

Mark A. Lyon, for Chicago, IL, for Dion Lewis.

Charles G. Murphy, Murphy, Peters & Davis, Chicago, IL, for Jathel Garrett.

Stanley L. Hill, Hill & Associates, Chicago, IL, for Jamie Pugh.

Richard T. Sikes, Sr., Chicago, IL, for Derrick Mallett.

John T. Thies, Chicago, IL, for Quan Ray.

Kent R. Carlson, Chicago, IL, for Richard Wash.

Joseph R. Lopez, Gerardo S. Gutierrez, Chicago, IL, for Toney Montgomery.

Stephen E. Eberhardt, Chicago, IL, for Scott Davis.

Robert G. Clarke, Standish E. Willis, Chicago, IL, for James Doty.

Steven Saltzman, Standish E. Willis, Chicago, IL, for James Yates.

Donna Hickstein–Foley, Chicago, IL, for Michelle Gaines.

Michael B. Mann, Zavislak & Mann, Oakbrook, IL, for Angela Parks.

Before BAUER, FLAUM and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

The Government appeals from the district court's July 3, 1996 order suppressing sixty-five hours of tape-recorded evidence. The district court ordered the tapes suppressed until the Government transcribes the tapes in their entirety. Defendant-appellee Jeffrey Hatcher ("Hatcher") contends that this Court does not have jurisdiction to hear the appeal, arguing that the July 3 order did not suppress or exclude evidence. Hatcher argues, alternatively, that the district court did not err in entering the order. We conclude that we have jurisdiction over the appeal, and we reverse the district court's order in part.

## BACKGROUND

This appeal arises from one case in a series of three indictments returned by the Grand Jury on August 30, 1995.[1] Among other things, the indictments charged each of thirty-nine defendants with participating in a twenty-five year narcotics conspiracy in violation of 21 U.S.C. § 846, and charged about half of the defendants, including Hatcher, with operating a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. The indictments alleged that the defendants belonged to the Gangster Disciples street gang, which provided the structure and organization for the conspirators' sale and distribution of drugs.

The indictment from which this appeal arises, *United States v. Parks*, named nineteen defendants and had fifty counts. The indictment alleged that the Gangster Disciples operated through a hierarchy, which included a Board of Directors, Chairman of the Board, Governors, Regents, Coordinators and Soldiers. At all times during the alleged conspiracy, Larry Hoover ("Hoover") was the

1. *See United States v. Hoover*, 95 CR 508, *United States v. McCain*, 95 CR 509, and the instant case, *United States v. Parks*, 95 CR 510. The Grand Jury returned a superseding indictment in the *Parks* case on June 19, 1996 removing several substantive counts from the original indictment.

so-called "Chairman of the Board," which meant that Hoover directed and controlled the activities of the gang. Hoover was able to continue directing the Gangster Disciples despite the fact that he had been incarcerated for murder since 1973. Hatcher was alleged to be on the gang's Board of Directors.

This appeal concerns intercepted conversations between Hoover and his visitors at the Vienna Correctional Facility in Vienna, Illinois, during the fall of 1993. Pursuant to a court-authorized intercept, conversations between Hoover and his visitors were seized using a small transmitter placed in a thin visitor's pass worn around visitors' necks. The conversations were intercepted on six different days spread out over seven weekends. The conversations ranged from three to eight hours in duration depending upon the length of the visit with Hoover. Because such an extremely small transmitter was used to avoid detection, the clarity of the tapes of the intercepted conversations was compromised. Background noise, the power of the transmitter, and the hushed tones of the speakers make it difficult to understand the conversations without familiarity with the speakers' voices and manner of speaking.

The Government was able to intercept sixty-five hours of conversation before the transmitter was discovered. A Government agent, Mary Hodge, painstakingly listened to the sixty-five hours in order to isolate fragments of the tapes which would be relevant for use at trial. The Government eventually determined that particular fragments of conversations, adding up to four hours of playing time, were relevant. The four hours describe the hierarchical structure of the Gangster Disciples, and include discussions about narcotics trafficking, acts of violence, and efforts to thwart law enforcement. Although none of the defendants in the *Parks* indictment are overheard on the Vienna intercept, as the Government itself concedes, the four hours are "the heart of the Government's case" in that they set out the structure of the gang. The four hours were in fact used, without objection, in the first Gangster Disciple trial, *United States v. McCain,* 95 CR 509, in front of Judge Plunkett. In *McCain,* the jury was able to listen to the tapes and follow along on a televised transcript. The Government seeks to introduce the same four-hour portion at this trial.

During pretrial discovery in this case, the Government tendered to defendants approximately eight copies of the entire sixty-five hours of tapes, as well as written transcripts for the four hours the Government seeks to introduce at trial. The Government later tendered to defendants an enhanced version of the four-hour portion in which some background noise had been eliminated.

On June 11, 1996, Hatcher filed a motion in limine asking the district court to suppress the Vienna tapes, arguing that they were inaudible and untrustworthy and, therefore, should not be admissible. Beginning on June 17, 1996, the district court conducted an audibility hearing as to the four-hour portion of the tapes, listening to the tapes without the benefit of transcripts. On June 20, 1996, the district court made an oral ruling and set forth seven findings of fact. The most significant finding was that it was possible to transcribe the four-hour portion, as Agent Hodge had done, and that, therefore, the tapes were audible. The district court also found that "scrubbing" or enhancing the quality of the tapes did not significantly increase their audibility. The court had listened to the tapes *in camera* with African–American court personnel and concluded: "[T]he main difficulty that these tapes present is a lack of familiarity with the lingo, and the manner of communicating ideas by Black Americans as opposed to White Americans, if you will." The court further ordered:

> [T]he defendants should listen to these tapes with their counsel, because there is no question in the Court's mind that the defendants will understand with a high degree of precision, and rather easily based on ... the tests that I undertook in chambers, what was being said, and would be particularly alert to exculpatory information if we are going to be talking in terms of *Brady.*

The district court orally agreed to allow defense attorneys to cross-examine the staff members who had been able to understand the Vienna tapes. However, on June 28, 1996, when the court issued a written order

reflecting its audibility findings, it withdrew the offer to allow cross-examination of the court personnel because of their unwillingness to repeat the experiment in open court. In the written order, the district court repeated its finding that "the tapes suffer more from a translation problem and less significantly from an audibility problem." The district court therefore agreed to investigate having Chicago African–American court personnel translate the entire sixty-five hours of the Vienna intercept.

On July 3, 1996, the district court *sua sponte* vacated its June 28 order and suppressed the tapes. While not changing its opinion on the audibility of the tapes or its factual findings from June 28, the court shifted the burden to the Government to transcribe the entire sixty-five hours, including the sixty-one hours the Government does not intend to use trial, and make them available for the defendants to examine for *Brady* material. The court stated:

> The defendants have a legitimate need to review what is said on the 65 hours of Vienna tapes. They should not have to take the word of the Government that nothing useful to the defense is present on those tapes, which the Government has apparently not spent sufficient time and resources to transcribe, particularly in this case where the stakes for the defendants are so high.

The court suggested that listening to the tapes without transcripts would be an "incredibly burdensome and/or expensive undertaking for defense counsel and their clients." As a result, the court concluded:

> [D]efendants should not have to undertake this project without transcripts. Therefore, because of the legitimate concerns that *Brady* material may be present in the 65 hours of Vienna tapes, and because of the incredible demands that determining whether *Brady* material is present in those tapes without the assistance of transcripts of them, *the court will suppress the 65 hours of Vienna tapes including the approximately 4 hours the Government has had transcribed and wishes to use at trial, until such time as the Government sup-*

> *plies the defendants with transcripts of those tapes.*

(emphasis added).

On July 19, 1996, the Government filed its notice of appeal from the district court's July 3 order suppressing the tapes. On July 30, Hatcher filed a motion to dismiss the appeal, objecting to this Court's jurisdiction because of the conditional nature of the district court's order. Hatcher argues that jurisdiction cannot vest in this Court until the Government makes a definitive statement expressing its unwillingness to abide by the July 3 order. We agreed to hear the jurisdiction issue along with the merits of the appeal.

## JURISDICTION

■ As a threshold matter, we must determine whether we do indeed have jurisdiction over this appeal. The United States may only appeal in a criminal case if it has explicit statutory authority. *United States v. Byerley*, 46 F.3d 694, 698 (7th Cir.1995) (citing *United States v. DiFrancesco*, 449 U.S. 117, 131, 101 S.Ct. 426, 434, 66 L.Ed.2d 328 (1980) and *United States v. Scott*, 437 U.S. 82, 84–85, 98 S.Ct. 2187, 2190, 57 L.Ed.2d 65 (1978)). The Government asserts that jurisdiction in this Court is based on 18 U.S.C. § 3731, which provides in relevant part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence ... not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

> \*    \*    \*    \*    \*    \*

> The provisions of this section shall be liberally construed to effectuate its purposes.

18 U.S.C. § 3731.

■ Hatcher argues that this Court cannot have jurisdiction based on § 3731 because the July 3 order is conditional and therefore renders any opinion by this Court merely advisory. He contends that before

the July 3 order can become a final suppression order, the Government must inform the district court whether it will supply defendants with the transcripts. Hatcher argues that "the absence of a clear Government position renders suppression in this case an open question."

We disagree with the characterization of the district court's order as "conditional." We find the July 3 order to be an unambiguous suppression order—the tapes are suppressed in their entirety until the Government produces and turns over transcripts to the full sixty-five hours. Further, the district court itself made manifestly clear that it was welcoming and waiting for clarification from this Court on the issue. On July 19, 1996, when the Government prosecutor informed the district court it was appealing the July 3 order, the district court responded that it was "[t]he best news [it had] heard so far in this case." This is certainly indication that the district court itself considered the July 3 order to be more than merely conditional, but rather, ripe for appeal.

In arguing that jurisdiction cannot vest in this Court until the Government informs the district court whether it will comply with the order, Hatcher relies on a First Circuit decision, *United States v. Kane,* which held that the First Circuit did not have jurisdiction over an order. 646 F.2d 4, 5–9 (1st Cir. 1981). Hatcher's reliance on *Kane* is misplaced. The holding in Kane merely evidences the First Circuit's factual determination that the order in question did not have the practical effect of excluding evidence. *Id.* at 7–8. In that regard, *Kane* does not dictate a finding that we do not have jurisdiction here. The *Kane* court said:

> The district court has not stated that it will exclude evidence if the government fails to comply. Rather than being a conditional order of exclusion ... the order in question is an unconditional direction which may be enforced by any of a variety of sanctions, only one of which is exclusion of evidence.

*Id.* at 8 (footnote omitted).

The order in *Kane* differs significantly from the challenged order in this case, in which the district court has unquestionably said it will suppress the tapes if the Government fails to comply. There is no suggestion here that any other sanction might be imposed upon the Government other than suppression of the tapes.

Assuming *arguendo* that the district court's order is "conditional," we observe that some conditional orders have been held appealable under § 3731. *See United States v. Presser,* 844 F.2d 1275, 1279–80 (6th Cir. 1988) (order appealable under § 3731 despite judge's conditional statement that he would suppress witnesses if Government refused to comply with discovery order); *United States v. Horwitz,* 622 F.2d 1101, 1104–05 (2d Cir. 1980) (order providing for suppression of witness testimony if Government refused to grant immunity appealable under § 3731), *cert. denied,* 449 U.S. 1076, 101 S.Ct. 854, 66 L.Ed.2d 799 (1981); *United States v. Cannone,* 528 F.2d 296, 298 (2d Cir.1975) (order providing for exclusion of witness testimony if witnesses were not identified appealable under § 3731); *United States v. Battisti,* 486 F.2d 961, 966–67 (6th Cir.1973) (order providing for the exclusion of witness testimony if Government refused to disclose witness information appealable under § 3731); *see also United States v. Todaro,* 744 F.2d 5, 8 n. 1 (2d Cir.1984) (conditional order appealable under § 3731), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1186, 84 L.Ed.2d 333 (1985).

In any case, both the record before us and the record before the district court unequivocally indicate that the Government will not comply with the July 3 order. We decline to remand this appeal for a formal declaration by the Government that it will not now or ever transcribe the entire sixty-five hours. From both a literal and a pragmatic standpoint, the July 3 order suppresses the tapes. The Government has sufficiently indicated that it will not comply with the order to transcribe the tapes. Although Hatcher may be waiting anxiously to see what the Government will do, it is obvious that the district court is not similarly troubled.

We refuse to adopt such a formalistic reading of § 3731, and we accordingly conclude that the July 3 order excluded evidence "within the spirit, if not the literal wording,

of 18 U.S.C. § 3731." *Battisti*, 486 F.2d at 967; *Presser*, 844 F.2d at 1280. We therefore find that under § 3731, we have jurisdiction over this appeal.

## ANALYSIS

### I.

■■■ Hatcher has steadfastly maintained that the Vienna intercept is inaudible. After careful and conscientious review of the tapes without the use of transcripts, the district court found that the four-hour portion was audible. The court stated that "the tapes suffer more from a translation problem and less significantly from an audibility problem." We review the district court's decision on this matter for abuse of discretion. *United States v. Powers*, 75 F.3d 335, 341 (7th Cir. 1996). We find no evidence in the record supporting the notion that the district court erred in finding the tapes to be audible. The district court's ruling was that it could hear the tapes, and that they were audible, but that it was unable to understand all of what was on the tapes since much of it involved vernacular and casual banter.[2] Further, we find it significant that the identical tapes were used in the McCain trial without objection. We therefore defer to the district court's finding that the tapes are audible.

### II.

■■ Hatcher also maintains that in order to have meaningful access to the tapes, the Government must provide transcripts to the entire sixty-five hours.[3] We agree, as the Government conceded in its briefs and at oral argument, that defendants are entitled to meaningful access to the tapes. However, defendants already possess, and have possessed since September 1995, multiple copies of the tapes in the same format in which the Government has them, as well as transcripts for the four-hour portion the Government seeks to play at trial. We find this to constitute more than meaningful access to the tapes, and we therefore decline to impose the further burden of transcribing the additional sixty-one hours on the Government.

While we have not previously addressed this issue, the Ninth Circuit has concluded on two separate occasions that the law does not place the burden of transcribing the entire lot of tapes on the Government where only part of the tapes are relevant to the case. *United States v. Zavala*, 839 F.2d 523, 527–28 (9th Cir.), *cert. denied*, 488 U.S. 831, 109 S.Ct. 86, 102 L.Ed.2d 62 (1988); *United States v. Gee*, 695 F.2d 1165, 1166–69 (9th Cir.1983). In *Zavala*, the appellant was convicted in a bench trial of multiple counts of violations of the federal drug laws. Pursuant to a court-ordered wiretap, approximately 11,000 telephone conversations had been intercepted, most of which were in Spanish. Of these 11,000 calls, the Government concluded that only approximately 1,800 were relevant to the drug-related charges. As in the present case, in Zavala the Government provided defense counsel with the tapes for the entire 11,000 calls, and also provided defense counsel with transcriptions of the 1,800 relevant calls. These transcriptions had been translated into English where necessary. On appeal, Zavala argued, among other things, that all his convictions should be overturned because the district court failed to order the Government to provide transcriptions for *all* of the tapes, and not merely those the Government pegged as relevant to the drug charges. Zavala argued that this failure constituted a violation of his due process and equal protection rights, in that his lack of access to the entire volume of

---

**2.** Although it is undisputed that there are some inaudible portions of the tapes, our cases have consistently maintained that partially unintelligible tape recordings are admissible unless the unintelligible portions are so substantial as to render the entire recording untrustworthy. *United States v. Larkins*, 83 F.3d 162, 167 (7th Cir. 1996). Any inaudibility of a portion of a tape is relevant only as to the weight of the evidence, a jury question, and not as to its admissibility. *United States v. Robinson*, 956 F.2d 1388, 1395

(7th Cir.), *cert. denied*, 506 U.S. 1020, 113 S.Ct. 654, 121 L.Ed.2d 581 (1992) (citation omitted).

**3.** We note that counsel for Hatcher suggested in argument to this Court that defendants would likely be dissatisfied with any Government expert analysis of the tapes. This position effectively precludes any possibility of the defendants agreeing that they have meaningful access to the tapes even if the Government hires experts to transcribe them.

tapes prevented him from preparing his defense. In rejecting this argument, the Ninth Circuit noted that "[i]n the context of a case with 11,000 conversations, and a reasonable response by the court and the prosecution, this argument is frivolous." *Id.* at 528. The Zavala court took note of the various offers by the court and prosecution to make access to the tapes easier for the appellant, and concluded that the procedures used by the court were "reasonable and fully respected appellant's constitutional rights." *Id.*

In *United States v. Gee,* a case with a slightly different factual scenario, the Ninth Circuit determined that the Government had satisfied its obligations to the defendant under Federal Rule of Criminal Procedure 16(a) and under the Due Process Clause of the Fifth Amendment by providing tapes prior to trial, but not providing one transcript prior to trial. 695 F.2d at 1167–69. In *Gee,* the defendant appealed from his conviction for conspiring to distribute cocaine. The evidence against Gee consisted of two tape-recorded conversations of poor quality and the testimony of one undercover agent. The tapes were initially played for defense counsel in the United States Attorney's office, and defense counsel were later provided with copies of the tapes, but no transcripts. At trial, the Government introduced one of the tapes and a corresponding transcript that the defendant had requested but which had not been provided prior to trial. At a later hearing on the day of Gee's sentencing, the trial judge determined that the Government was not required to prepare or produce the transcript prior to trial.

In rejecting Gee's arguments on appeal, the Ninth Circuit analyzed the Government's obligations to produce under Rule 16 of the Federal Rules of Criminal Procedure and under the Due Process Clause. The court determined that Gee was not prejudiced by not having the transcript prior to trial because he had significant access to the tapes before trial, including having his own copy of the tapes. Moreover, the court stated: "[W]e find no reason to assume that Gee was prevented or disabled from producing a transcript for his own use in the same manner in which the Government was able to produce its own transcript." *Id.* at 1167. In that regard, our case is even clearer than *Gee.* Here, of course, the Government has always been forthcoming with transcripts of the four hours it seeks to play at trial.

In coming to its conclusion, the *Gee* court also addressed the quality of the tapes. Although the tapes were of admittedly poor quality, the Ninth Circuit noted in a footnote that the quality was "unimportant" because both sides had equal opportunity to make use of the tapes, such as transcribing them, and because both sides had equal difficulty in understanding the tapes. *Id.* at 1166 n. 1. Similarly, here, the tapes are of admittedly poor quality, but we believe both sides have an equal opportunity to make use of the tapes, which includes making transcripts. We are unable to find evidence supporting Hatcher's contention that the Government can understand the tapes better than the defendants can. Further, we are unable to find evidence supporting Hatcher's contention that the Government somehow has more meaningful access to the tapes than the defendants do. We believe that the district court and the Government have responded reasonably to the large quantity of tape-recorded evidence in this case, and we conclude that the defendants already have meaningful access to the tapes.[4]

### III.

■ Contrary to Hatcher's arguments, the district court's July 3 order burdens the Government with transcribing the full sixty-five hours based solely upon its understanding of what is required under *Brady v. Maryland,*

---

4. In his brief, Hatcher claims he is entitled to access to the tapes: (1) to see if the Government fragments of conversations are misleading; (2) to determine whether individual defendants were in fact not part of the Board of the Gangster Disciples; (3) to find *Brady* material; (4) to prove the existence of multiple conspiracies; (5) to facilitate cross-examination; (6) to show the absence of reference to specific defendants; (7) to find other defense theories or motions for severance; and (8) to fulfill the general duty to investigate. Because we conclude that the defendants have meaningful access to the tapes, we find no reason why the defendants' access to the tapes is insufficient for any of these purposes.

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The district court unequivocally stated that it was requiring the Government to do this *"because of the legitimate concerns that Brady material may be present in the 65 hours of Vienna tapes, and because of the incredible demands [of] determining whether Brady material is present in those tapes without the assistance of transcripts of them."* (emphasis added). The district court erred in its belief that *Brady* requires the Government to carry the burden of transcribing the full sixty-five hours.

*Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196. We have said that to show a *Brady* violation, the defendant must establish: (1) that the prosecutor suppressed evidence; (2) that such evidence was favorable to the defense; and (3) that the suppressed evidence was material. *United States v. White*, 970 F.2d 328, 337 (7th Cir. 1992) (citations omitted). We also have stated that the Government's "obligation to disclose exculpatory or impeaching information under *Brady* is limited to that information which is then known to the government." *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir.), *cert. denied*, — U.S. —, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). We indicated in *Morris* that the Government will not be found to have suppressed material information if the information is available to a defendant through the exercise of reasonable diligence. *Id.* at 1170 (citations omitted).

In this case, there is no indication that the Government is withholding evidence from the defendants. In September 1995, approximately thirteen months prior to the trial date, the Government made the Vienna tapes available to the defendants. The Government has since made approximately eight other copies of the tapes for the defendants and their attorneys. In another instance, when notifying the district court that it would appeal the July 3 order, the Government offered to sit down with the defendants

and an agent and discuss the essence of the conversations on the tapes. Further, the district court has strongly suggested that it is open to accepting bids for the appointment of listeners for defense counsel.[5] All of this supports our conclusion that the Government is not suppressing evidence.

Moreover, we find that any information the defendants seek is available to them through the exercise of reasonable diligence. In *Morris*, for example, part of the Government's evidence against defendants was found in more than 700 boxes of potentially relevant documents. The Government had given the defendants and their counsel free and open access to the documents throughout the course of litigation. The district court, in determining there was no *Brady* violation, found the Government was unaware of any exculpatory documents in the boxes. Most important, in *Morris* we approved of the district court's emphasis on the fact that "defendants had been given the same opportunity as the government to discover the identified documents." 80 F.3d at 1168.

The same analysis is applicable here. As in *Morris*, the defendants and the Government have the same opportunity to discover, through reasonable diligence, whether there is any relevant information in the remaining sixty-one hours of the Vienna intercept. In both its original June 28 order and the later July 3 order, the district court found it "incredible" that the defendants themselves could not understand what the speakers on the Vienna intercept were saying. By listening to the tapes, the Government was able to discern which portions were relevant to its case, as well as to assure the defendants that no *Brady* material existed in the remaining sixty hours. We do not believe the Government has any opportunity or ability to hear or understand the tapes that the defendants do not have. There is nothing but mere speculation that the sixty-one remaining hours of the Vienna intercept contain any *Brady* material, and under our cases, speculation is not enough to establish that the Government has hidden evidence. *United States v. Nash*, 29 F.3d 1195, 1202 (7th Cir. 1994) (citation omitted).

5. The district court is authorized to make such an appointment under 18 U.S.C. § 3006A(e)(1).

There is no requirement under *Brady* that the Government transcribe the entire sixty-five hours of the intercept, much of which contains irrelevant information. Both parties have agreed that numerous hours of conversations on the tapes consist of discussions about card games, food and other social activities. The trial in this case should not and need not be postponed for months while the Government transcribes these irrelevant and useless hours of conversation. There is no logical or practical reason to hold the Government's evidence hostage until the Government performs an act not required by law, nor is there any reason to require the Government to conduct defendants' investigation for them. *See United States v. White*, 970 F.2d 328, 337 (7th Cir.1992) (citations omitted). Although the district court noted that the "stakes were high" in this case, the court cannot require the Government to meet a higher burden than is required by law.

### CONCLUSION

We find that the district court erred in the July 3, 1996 order by requiring the Government to transcribe the entire sixty-five hours of the Vienna intercept. In both the June 28 order and the July 3 order, the district court found the tapes to be audible, and we uphold that finding. The defendants already have meaningful access to the tapes, and, moreover, the Government has already exceeded the obligations imposed on it under *Brady*. Accordingly, we reverse that portion of the district court's July 3 order requiring the Government to transcribe the tapes, and remand the case for trial.