**In the Matter of Jeffrey C. HATCHER, Sr., Petitioner.**

**No. 98–2098.**

United States Court of Appeals, Seventh Circuit.

Submitted May 4, 1998.

Decided May 13, 1998.*.

---

* On May 13, 1998, this court, the Hon. William J. Bauer dissenting, issued an order granting the Petition for a Writ of Mandamus. This opinion explains the reasoning of the panel.

Jeffery C. Hatcher (submitted), Chicago, IL, Petitioner Pro Se.

Jonathan D. King (submitted), Office of the United States Attorney, Criminal Division, Chicago, IL, for Respondent.

Before BAUER, RIPPLE, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

The Gangster Disciples were one of the largest and most powerful of Chicago's street gangs. See generally *United States v. Parks*, 100 F.3d 1300 (7th Cir.1996); *United States v. Irwin*, 149 F.3d 565, (7th Cir.1998). On August 30, 1995, a Chicago federal grand jury returned indictments in three related cases, Nos. 95 CR 508, 95 CR 509, and 95 CR 510, charging 39 members of the Gangster Disciples with a variety of federal drug and conspiracy crimes. Petitioner, Jeffrey Hatcher, was named as a co-conspirator in two of the original indictments, Nos. 95 CR 508 and 95 CR 509, and as a defendant in the third, No. 95 CR 510. Gang leader Larry Hoover, who controlled the gang's drug trafficking business from his prison cell in downstate Illinois, was one of the defendants in No. 95 CR 508 (the Hoover indictment), and was named as a co-conspirator in the other two indictments. Hoover and his co-defendants' case went to trial in the spring of 1997

before Judge Harry D. Leinenweber of the U.S. District Court for the Northern District of Illinois. Hoover was convicted on May 9, 1997, and later received a mandatory life sentence. Most of Hatcher's codefendants in No. 95 CR 510 (the 1995 Hatcher indictment) were also tried and convicted in the spring of 1997, before Judge George W. Lindberg. Hatcher himself was not tried at that time. Instead (because he had skipped town), he was transferred before that trial to a new indictment, No. 96 CR 553 (this case, which we will refer to as the "second Hatcher indictment").

Trial in the present case was scheduled for May 1998. Prior to trial Hatcher, who had since been apprehended, moved under 28 U.S.C. § 455 to have presiding District Judge Charles Kocoras recuse himself. Hatcher pointed out that the district judge's son, while working as an intern in the U.S. Attorney's office as a third-year law student, had assisted in the Hoover trial. The judge's son, presumably acting under the authority of Northern District of Illinois General Rule 3.11 (which allows supervised third-year law students to act as attorneys), presented eight government witnesses to the jury. Notwithstanding that fact, Judge Kocoras denied Hatcher's § 455 motion, prompting Hatcher to petition this court for a writ of mandamus ordering the judge to recuse himself. On May 13, 1998, we granted Hatcher's petition and issued the requested writ.

Although Hatcher's *pro se* petition is not as clear as it might have been had it been prepared with the assistance of counsel, we understand him to be raising two distinct types of claims under § 455. The first arises under two subparts of § 455(b), which require a judge to disqualify herself when she has personal knowledge of disputed evidentiary facts ((b)(1)), or when a person within the third degree of relationship to the judge is acting as a lawyer in the proceeding ((b)(5)(ii)). Hatcher's second claim arises under the umbrella rule of § 455(a), which requires disqualification any time even an appearance of impropriety is present, or, as the statute puts it, the judge's "impartiality might reasonably be questioned." We agree with Judge Kocoras that the facts presented here did not require his recusal under either subsection of § 455(b). Notwithstanding our complete confidence in his integrity and impartiality, however, we conclude that the circumstances of this case required him to recuse himself under § 455(a) because of the significant risk of an appearance of impropriety.

## I

A more extensive account of this case and the ones that preceded it is necessary to understand Hatcher's recusal motion, because our resolution of the motion turns on the degree to which the Hoover case and the present case overlap for purposes of § 455. On August 30, 1995, a grand jury in the Northern District of Illinois returned the three related indictments mentioned above, charging 39 leaders of the Gangster Disciples with various drug, conspiracy, and continuing criminal enterprise offenses:

> Among other things, the indictments charged each of thirty-nine defendants with participating in a twenty-five year narcotics conspiracy in violation of 21 U.S.C. § 846, and charged about half of the defendants, including Hatcher, with operating a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848. The indictments alleged that the defendants belonged to the Gangster Disciples street gang, which provided the structure and organization for the conspirators' sale and distribution of drugs.

> ... The indictment[s] alleged that the Gangster Disciples operated through a hierarchy, which included a Board of Directors, Chairman of the Board, Governors, Regents, Coordinators and Soldiers. At all times during the alleged conspiracy, Larry Hoover ("Hoover") was the so-called "Chairman of the Board," which meant that Hoover directed and controlled the activities of the gang. Hoover was able to continue directing the Gangster Disciples despite the fact that he had been incarcerated for murder since 1973. Hatcher was alleged to be on the gang's Board of Directors.

*Parks*, 100 F.3d at 1301–02. Of these 39 defendants, 27, including Hoover, were convicted after jury trials, and five pleaded guilty to at least one charge. Two are currently fugitives. The indictments against two were dismissed in order to allow separate capital murder trials; the indictment against another, currently in prison on unrelated charges, see *United States v. Montgomery*, 129 F.3d 120 (table), 1997 WL 632587 (7th Cir.1997), seems to have been dismissed outright; and one was found not guilty after a jury trial. Last, as we have already noted, Jeffrey Hatcher, originally covered by No. 95 CR 510, was reindicted in No. 96 CR 553. One defendant, Tirenzy Wilson, was transferred from case No. 95 CR 509 to No. 95 CR 508 before trial.

No rhyme or reason differentiates the three 1995 indictments. Each one names a certain number of defendants, and lists the remainder of the conspirators by name as unindicted co-conspirators; the unindicted people from each one show up as indicted defendants in one of the other two. The only apparent explanation for the division is administrative convenience. The first four counts in each indictment—the central counts—are reproduced almost verbatim in each of the three.

The conspiracy alleged in the three 1995 cases covered a time period from the early 1970s through the date of the indictments, while the second Hatcher indictment identified the period "[f]rom approximately the mid–1980s through the date of [the] indictment." We describe the second Hatcher indictment first, and then compare it to the Hoover indictment, the case in which Judge Kocoras's son participated. The second Hatcher indictment includes fifteen criminal counts, as well as forfeiture allegations; Hatcher is charged in Counts One through Five. Count One alleges a conspiracy involving Hatcher and others knowingly to possess with intent to distribute and to distribute various drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Three alleges that Hatcher and others used and employed minors in the conspiracy alleged in Count One, in violation of § 861(a)(1). Count Four alleges the employment of minors "to assist in avoiding detection and apprehension" for the Count One conspiracy, in violation of § 861(a)(2). Count Two alleges that Hatcher and others engaged in a continuing criminal enterprise, under 21 U.S.C. § 848(a), based upon the crimes alleged in Counts One, Three, and Four in violation of 21 U.S.C. §§ 841, 843(b), 846, and 861(a)(1) and (2). Finally, in Count Five, Hatcher is alleged to have violated 18 U.S.C. § 922(g) by possessing a firearm—a Colt Official Police Special, serial number 712129—on or about October 15, 1994, despite having been previously convicted of a crime punishable by imprisonment for a term exceeding one year.

Count One is the center of this web. It accuses eight men of being members of the conspiracy, lists by name 26 unindicted co-conspirators, and states that "others known and unknown to the grand jury" were also members of the conspiracy. The indictment then details the organization of the Gangster Disciples. Paragraph 1 names the eight defendants and the unindicted co-conspirators and alleges that they conspired to distribute a variety of contraband substances. Paragraphs 2 through 15 and 21 set forth in some detail the workings of the gang. Paragraphs 16 through 20 allege efforts to "reestablish control" of the gang "after many of the top leaders of the Gangster Disciple organization were indicted on August 31, 1995" (¶ 16), such as attempts by various gang members, including Jeffrey Hatcher, to assume control of the gang and to start a gang war to help the Gangster Disciples to regain power within the Chicago region.

We now turn, for comparison, to the allegations in the Hoover indictment. It set forth fifty counts and named Larry Hoover and eight others as defendants. Counts One to Four directly parallel the second Hatcher indictment, centered around an alleged conspiracy involving Hoover and 38 named individuals knowingly to possess with intent to distribute and to distribute various drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts Five through Fifty detail a variety of alleged drug, weapons, and related offenses. Count Fifteen alleged that three defendants possessed a Colt Official Police Special, serial number 712129 (exactly the same gun alleged in No. 96 CR 553), on or about October 15,

1994 (the same day as alleged in No. 96 CR 553), despite having been previously convicted of crimes punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g).

The overlap between the Hoover indictment and the second Hatcher indictment is almost complete. The conspiracy alleged is, almost verbatim, the same, except that the second Hatcher indictment alleges that the conspiracy started somewhat later and adds certain allegations relating to conduct after the Hoover indictment was handed down (Paragraphs 16 to 20, discussed above). Of the 34 people alleged to be a member of the conspiracy in Count One of the second Hatcher case, 26 were alleged to be a member of the conspiracy in Count One of the Hoover indictment; of the 39 listed in Count One of the Hoover indictment, 26 appeared in the second Hatcher case. Jeffrey Hatcher appears in both. Even Hatcher's weapons violation—Count Five in the second Hatcher indictment—perfectly duplicates a parallel count—Count Fifteen—in the Hoover indictment.

## II

■ We begin our analysis of Hatcher's present motion with the point he has emphasized most strongly, which we find to be without merit. During the course of the Hoover trial, Hatcher learned, Judge Kocoras spent some time sitting in the public audience section of Judge Leinenweber's courtroom, so that he could observe his son's performance. Hatcher alleges now that this gave Judge Kocoras "personal knowledge of disputed evidentiary facts" in his own case, thereby satisfying the standard for mandatory recusal under § 455(b)(1).

We disagree. First, as the government pointed out in its response to Hatcher's petition, Judge Kocoras was present only as a spectator in the courtroom. He therefore learned nothing about the Gangster Disciple conspiracy that any member of the public could not also have learned by attending the trial or reading a good newspaper account of its progress. This limited exposure is simply not the kind of *personal* knowledge of disputed evidentiary facts with which § 455(b)(1) is

concerned. *Cf. Diamondstone v. Macaluso,* 148 F.3d 113 (2d Cir.1998) (judge did not gain sufficient personal knowledge of disputed evidentiary facts "by walking past ... peace vigils, which were only tangentially related to [Plaintiff's] claims"); *Easley v. University of Michigan Bd. of Regents,* 906 F.2d 1143 (6th Cir.1990) (knowledge gained by judge while serving on law school's Committee of Visitors did not require recusal from suit alleging discrimination by law school). Second, Judge Kocoras has made it clear that he has no recollection of any particular evidence that was presented while he was in attendance. Like any proud parent, he was paying attention to what his son was doing, not to the details of the trial. A review of transcripts of the examination of the witnesses Judge Kocoras's son presented in the Hoover trial shows, not surprisingly, that the Assistant U.S. Attorney in charge of the case allowed the judge's son to present only witnesses of limited significance. Finally, both the judge and the government have pointed out that the judge has been supplied with transcripts from prior related trials as part of the government's proffer in the present case. Those transcripts have given him legitimate access to the same kind of information he may have heard while he was watching the earlier trial. See *Edgar v. K.L.,* 93 F.3d 256, 259 (7th Cir.1996) ("The point of distinguishing between 'personal knowledge' and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process."); *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Under these circumstances Judge Kocoras perhaps could have chosen to recuse himself under the terms of § 455(b)(1) without abusing his discretion, but we hold that Hatcher has not shown that he was required to do so.

## III

■ Next, we consider whether the participation of the judge's son in the Hoover trial was enough to require recusal under the provisions of § 455(b)(5), which in relevant part reads as follows:

[The judge] shall also disqualify himself in the following circumstances:

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(ii) Is acting as a lawyer in the proceeding; . . . .

The first question under this part of the statute is whether the relative in question is closely enough related to the judge to trigger its restrictions. The degree of relationship is calculated according to the civil law system, 28 U.S.C. § 455(d)(2), and it is clear that a judge's children fall within its purview. See Wright, *et al.*, 13A Federal Practice & Procedure: Jurisdiction 2d § 3548 at 607 n. 3; *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136 (6th Cir.1990) (*en banc*) (daughter's presence as attorney in proceeding required recusal).

■ The next question is slightly more complex: as a third-year law student participating in the case under the authority of N.D. Ill. General Rule 3.11, was the judge's son "acting as a lawyer" in the proceeding or not? General Rule 3.11 allows third-year law students who have met the requirements of Illinois Supreme Court Rule 711 to participate in proceedings to the same extent that they could under the authority of the state's rule. Rule 711, in turn, permits eligible law students to participate in criminal trials where imprisonment is a potential penalty "as an assistant of [a] supervising member of the bar, who shall be present and responsible for the conduct of the proceedings." This rule appears in Article VII of the Illinois Supreme Court rules, which is entitled "Rules on Admission and Discipline of Attorneys." Rule 711 carves out a set of legal services that third-year law students are permitted to perform, under the specified circumstances. In our view, this is just another way of saying that a third-year law student may act as a lawyer within the limitations imposed by the rule. As such, she bears the same ethical responsibilities to her client and to the court that a full-fledged member of the bar would have, just as an associate in a law firm does despite working under the supervision of a partner. *Cf.* Illinois Rules of Professional Conduct, Rule 5.2(a); Restatement (Third) of The Law Governing Lawyers § 13

(Proposed Final Draft No. 2, 1998) (adopted May 1998). This court expects no less of the third-year law students permitted to practice before it.

We recognize that law students operating under Rule 711 have not been admitted to the bar and are therefore technically not yet "lawyers." Illinois Supreme Court Rule 701(a); Restatement, *supra*, § 1; *cf.* Restatement, *supra*, § 4 comment c (law students acting under the equivalent of Rule 711 are not engaged in the *unauthorized* practice of law, and thus do not violate the ban on persons "not admitted to practice as a lawyer" engaging in the "unauthorized practice of law"). In some states law student interns are specifically subjected to the rules governing lawyers, see, *e.g.*, Washington State Admission to Practice Rules, Rule 9(c); Rules and Regulations Governing the Participation of Qualified Law Students and Qualified Unlicensed Law School Graduates in the Trial of Cases in Texas, Rule II(D)(2), but this seems not to be the case in Illinois. See generally Steven H. Leleiko, *State, Federal Rules Permitting the Student Practice of Law: Comparisons and Comments*, in Bar Admission Rules and Student Practice Rules 913, 921–22 (Fannie J. Klein *et al.*, eds.1978). This question, however, is distinct from what matters here: whether such students are acting as lawyers for purposes of § 455. While novel, this is a simple inquiry, with a simple answer—they are. *Cf. In re A.V.*, 285 Ill.App.3d 470, 220 Ill.Dec. 847, 674 N.E.2d 118, 121 (1996) (finding ineffective assistance of counsel by two law students operating under Rule 711). We conclude, therefore, that the judge's son was "acting as a lawyer" in the Hoover proceeding.

■ Even if the judge's son was "acting as a lawyer," we must still consider whether, for purposes of the mandatory disqualification rule of § 455(b)(5)(ii), the Hoover case was the same "proceeding" as the Hatcher trial that was before Judge Kocoras. "Proceeding" is defined in § 455(d)(1), to "include[ ] pretrial, trial, appellate review, or other stages of litigation." As a formal matter, Hatcher's case has never been part of the same proceeding as Hoover's. The two men were charged in 1995 under different indict-

ments, and Hatcher was never one of Hoover's co-defendants. No matter how closely related the two cases were factually or legally (as different aspects of the same conspiracy), the fact remains that they were separate "proceedings." *Cf. In re Aetna,* 919 F.2d at 1146 (Kennedy, J., concurring for a majority of the court) (consolidated cases counted as the same proceeding). Precisely because § 455(b) sets forth mandatory disqualification rules, courts have read its requirements strictly, so that both judges and litigants will know when a judge must step aside. *Cf. In Matter of National Union Fire Ins. Co.,* 839 F.2d 1226, 1229 (7th Cir.1988) ("The judicial system has an interest in precise rules for disqualification, to reduce the time that must be spent fencing about who decides the case and get on with decision."); *Edgar,* 93 F.3d at 259; *McCuin v. Texas Power & Light Co.,* 714 F.2d 1255, 1259 (5th Cir.1983) ("Congress' purpose [in amending § 455] was to adopt a categorical rule that would be self-enforcing."). Because the Hoover case in which the judge's son participated was not the same proceeding as Hatcher's present case, we conclude that Judge Kocoras was not required to recuse himself under § 455(b)(5)(ii).

## IV

■■ That leaves the remaining theory for recusal, which is under the more open-ended standard of § 455(a). Unlike recusal under § 455(b) or the somewhat similar 28 U.S.C. § 144, the denial of a motion for recusal under § 455(a) may be challenged only by asking for a writ of mandamus prior to trial. *United States v. Horton,* 98 F.3d 313, 316–17 (7th Cir.1996); *Taylor v. O'Grady,* 888 F.2d 1189, 1201 (7th Cir.1989); *United States v. Balistrieri,* 779 F.2d 1191, 1205 (7th Cir.1985). Our review is *de novo, Hook v. McDade,* 89 F.3d 350, 353–54 (7th Cir. 1996) (citing *Taylor,* 888 F.2d at 1201), *cert. denied,* — U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 637 (1997), though mandamus is an extraordinary remedy we do not grant lightly.

■ Section 455, as we have already noted, requires a judge to disqualify herself if her "impartiality might reasonably be questioned." In applying this standard, we are guided by the situations outlined in § 455(b), because "affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a)." *National Union Fire Ins.,* 839 F.2d at 1229. See also Wright, *et al.,* 13A Federal Practice and Procedure: Jurisdiction 2d § 3549, at 613–14 ("Because of [the] general provision of § 455(a), an overly-nice reading is not required of the specific instances of disqualification spelled out in § 455(b)."). Even if analogies to the § 455(b) categories do not exhaust the possibilities for a § 455(a) recusal, the analogous situations must be evaluated with great care by judges.

■ The standard in any case for a § 455(a) recusal is whether the judge's impartiality could be questioned by a reasonable, well-informed observer. See *Hook,* 89 F.3d at 354. In *Hook,* we explained that § 455(a) "asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry." *Id.* (citations omitted).

> An objective standard creates problems in implementation. Judges must imagine how a reasonable, well-informed observer of the judicial system would react.... [D]rawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety. So although the court tries to make an external reference to the reasonable person, it is essential to hold in mind that these outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.

*In re Mason,* 916 F.2d 384, 386 (7th Cir. 1990). See also *Liteky,* 510 U.S. at 548, 114 S.Ct. 1147 ("[W]hat matters [under § 455(a) ] is not the reality of bias or prejudice but its appearance."); *Pepsico v. McMillen,* 764 F.2d 458 (7th Cir.1985) (ordering recusal under § 455(a)); *SCA Services, Inc. v. Morgan,* 557 F.2d 110 (7th Cir.1977) (same); *In re School Asbestos Litigation,* 977 F.2d 764 (3d Cir.1992) (same).

The question here is whether the Hoover case in which the judge's son participated is so closely related to Hatcher's case that our hypothetical reasonable person would question the judge's impartiality. Reluctantly, we conclude that the answer is yes. Conceding the point, as we have, that the Hoover prosecution and the present Hatcher case are formally separate proceedings, our examination of the two indictments leaves no doubt that functionally they are both component parts of one large prosecution of the continuing criminal enterprise, conspiracy, and drug offenses of the members of the Gangster Disciple gang. Outside observers have no way of knowing how much information the judge's son acquired about that broader prosecution while working on the Hoover case. We underscore that the admitted fact that Judge Kocoras's son actually worked on the Hoover case while he was an intern in the U.S. Attorney's office is critically important to our decision. The Advisory Committee on Judicial Activities has concluded that under Canon 3C of the Code of Conduct for United States Judges "[a] judge whose child is an Assistant United States Attorney need not for that reason alone recuse from all cases in which the United States Attorney appears as counsel, although the child may not participate in cases before the parent." Compendium § 3.21(a)(1) (1995), citing Advisory Opinion No. 38. We are also not saying that any connection, however tenuous, between two cases would require recusal under § 455(a); indeed, we held to the contrary in *National Union Fire Ins., supra.* See also *S.J. Groves & Sons Co. v. International Bhd. of Teamsters*, 581 F.2d 1241, 1246–49 (7th Cir.1978). This is instead the rare case where the earlier proceedings were so close to the case now before the judge that recusal under § 455(a) was the only permissible option. *Cf. In re Aetna*, 919 F.2d at 1143 (ordering recusal under § 455(b)(5), but indicating that had the related proceedings been slightly more distinct, sufficiently so to preclude requiring recusal under that provision, the court would have found that § 455(a) applied).

We come to this conclusion because, as we explained earlier in this opinion, the indictments charged virtually the same offenses, committed by the same people. In one count, as we noted, the very same gun with the same serial number formed the basis for a charge. Hatcher appears as an unindicted co-conspirator in Hoover's case; Hoover plays the same role in Hatcher's case. Last, although we regret very much the necessity of upsetting the start of a trial toward which both the judge and the parties had devoted so much time, the outcome of any criminal trial must come about through procedures that are not only fair in fact, but that are also seen to be fair by the public.

We therefore granted the petition for the writ of mandamus filed by Jeffrey Hatcher and ordered that the Hon. Charles P. Kocoras recuse himself from presiding over Hatcher's trial in case No. 96 CR 553 in the Northern District of Illinois.

BAUER, Circuit Judge, dissenting.

I dissent. No good purpose would be served by going on at length-the matter is presently moot—but I do not think that Judge Kocoras had to recuse himself. And if it was not required, it would have been wrong to do so.

The opinion points out that the two proceedings discussed were "separate proceedings". It also properly finds that the knowledge the judge obtained by visiting the Hoover trial did not require his recusal. For me, that ends the inquiry.

The son did not appear before Judge Kocoras in this (or any other) case. The cases were distinct and Judge Kocoras denied the motion to recuse. I disagree that a reasonable person could question his impartiality. He was right not to grant the motion to recuse; we were wrong to compel it.