165 F.3d 31
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Jeff C. ARBOGAST, Plaintiff-Appellant,
v.
ALCOA BUILDING PRODUCTS, a corporation doing business in the
State of Illinois, Defendant-Appellee.
 No. 97-3626.
 United States Court of Appeals, Seventh Circuit.
 Submitted Aug. 27, 1998.*
Decided Aug. 27, 1998.
Rehearing and Suggestion for Rehearing En Banc Denied Oct. 26, 1998.
 
 Appeal from the United States District Court for the Central District of Illinois. No. 96-C-1586. Joe B. McDade, Judge.
 Before Hon. RICHARD A. POSNER, Hon. WILLIAM J. BAUER, Hon. DANIEL A. MANION, Circuit Judges.
 
 ORDER
 
 1
 Jeff Arbogast, an employee of Alcoa Building Products ("ABP"), was unable to drive himself to the training classes he needed in order to secure a better position at ABP because his driver's license was revoked after his third conviction for driving drunk. Arbogast contends that his alcoholism is a disability, and that ABP is liable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, for failing to take reasonable steps to accommodate his disability. The district court granted summary judgment on his claim in favor of ABP, and Arbogast appeals. We affirm.
 
 
 2
 The following facts are either undisputed or viewed in the light most favorable to Arbogast, the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Arbogast resides in Princeville, Illinois, where ABP is located. Arbogast has worked for ABP since 1982, and ABP has known for almost the entire time that he is an alcoholic. Arbogast was sober for approximately four years, between 1988 and 1992, but he has since resumed his drinking. His Illinois driver's license was revoked in 1988 following his third conviction for driving under the influence of alcohol. Arbogast's continued drinking prevents him from regaining his license.
 
 
 3
 In April, 1995, Arbogast applied for a maintenance apprenticeship and passed the examination required for admittance to the training program. The training program included classes that were offered only at Illinois Central College in East Peoria, at least 15 miles from Princeville. Anticipating that he would have difficulty in getting to the classes because he cannot drive, Arbogast asked the ABP Director of Human Resources for three possible accommodations: that ABP transport him to and from classes, or modify his work schedule so that he could arrange for transportation on the days he had classes, or grant him a leave of absence to complete his courses. ABP informed Arbogast that it would not provide any of the requested accommodations. Arbogast began attending classes, with his mother driving him to and from class despite great inconvenience to her, but he apparently failed to complete the training for the maintenance apprenticeship. Arbogast still works at ABP.
 
 
 4
 Arbogast filed an EEOC charge and then brought suit under the ADA, claiming that ABP discriminated against him on the basis of his alcoholism and unreasonably refused to provide the accommodations he requested. ABP moved to dismiss the complaint. When Arbogast submitted an affidavit and other documentary evidence with his response to the motion, the district court converted the motion to dismiss into a motion for summary judgment as required by Rule 12(b) of the Federal Rules of Civil Procedure. After the motion was fully briefed, the court granted summary judgment in favor of ABP. The court simultaneously denied Arbogast's motion for appointment of counsel. Thereafter, Arbogast filed two motions to modify the record, seeking to bring additional evidence to the court's attention, including evidence that Arbogast believed supported his assertion that the district judge had a conflict of interest that led him to favor ABP. The court denied both motions. Arbogast filed two similar motions in this court, which were denied.
 
 
 5
 On appeal, Arbogast raises three issues. First, he argues that summary judgment should not have been granted. Second, he claims that the district court wrongly denied his motion for appointment of counsel. Third, Arbogast contends that the district judge erred in not recusing himself because of a conflict of interest. We examine each of these issues in turn.
 
 Summary Judgment on ADA Claim
 
 6
 Arbogast first argues that the district court wrongly granted summary judgment in ABP's favor, because he produced evidence that ABP discriminated against him on the basis of a disability, his alcoholism. We review the grant of summary judgment de novo. DeLuca v. Winer Indus., Inc., 53 F.3d 793, 796 (7th Cir.1995).
 
 
 7
 The ADA prohibits employers from discriminating against any qualified person with a disability with respect to any term, condition or privilege of employment. 42 U.S.C. § 12112. Arbogast claims that ABP discriminated against him in refusing to accommodate his alcoholism by making arrangements allowing him to get to the training classes he needed for the maintenance apprenticeship. The first flaw in this argument is in the causal chain. Even assuming that alcoholism may be a disability within the meaning of the ADA, see Duda v. Board of Educ., 133 F.3d 1054, 1059 n. 10 (7th Cir.1998); Despears v. Milwaukee County, 63 F.3d 635, 635 (7th Cir.1995), it was not alcoholism that caused the suspension of Arbogast's driver's license, but rather his decision to drive while drunk on several occasions. See Despears, 63 F.3d at 636-37 (the law assumes that alcoholics are capable of avoiding driving while drunk; the loss of a driver's license for driving under the influence is therefore not solely traceable to the disability of alcoholism). Under Despears, the barrier to Arbogast getting to the training classes is his own past conduct, not a disability such as alcoholism. Because Arbogast's disability did not cause his travel difficulties, the ADA does not require ABP to accommodate those travel difficulties any more than it would require ABP to provide transportation to someone who does not own a car. ABP might voluntarily choose to provide such transportation to be helpful, or to maximize its employees' capabilities, but the ADA does not require that it do so.
 
 
 8
 A second flaw in Arbogast's argument is that he presented no evidence that ABP discriminated against him on the basis of his disability, i.e., that it treated similarly situated non-disabled persons more favorably. See DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797-98 (7th Cir.1995) (more favorable treatment of non-disabled employees is part of prima facie ADA case). Arbogast claims that ABP has occasionally provided the types of accommodation he requested to other (presumably non-disabled) employees, but his sole evidence of this is documents suggesting that ABP once arranged for a group of ABP Blend Associates to receive computer training in Princeville, and that Illinois Central College has on occasion offered one of the courses required for the Maintenance Apprenticeship (but not other required courses) at Princeville. Standing alone, these documents are insufficient to show any disparate treatment of disabled persons. Arbogast has not described any similarities in the training of Blend Associates and Maintenance Apprentices, or shown that non-disabled trainees for the Maintenance Apprenticeship were treated more favorably than Arbogast. Moreover, there is no evidence that ABP ever transported anyone, disabled or non-disabled, to Illinois Central College for maintenance classes. Summary judgment was appropriate given the lack of evidence of any discrimination on the basis of disability.[1]
 
 
 9
 Arbogast raises a number of other arguments in support of his claim, but they cannot overcome the fatal flaws discussed above. We therefore affirm the district court's grant of summary judgment to ABP.
 
 Appointment of Counsel
 
 10
 Arbogast requested that counsel be appointed to assist him, arguing that his alcoholism prevented him from adequately litigating his claim. The district court denied the request in the same order in which it granted summary judgment for ABP. We review the district court's decision for abuse of discretion, only reversing in those extreme cases in which "the difficulty of the issues relative to the capabilities of the litigant would make it impossible for him to obtain any sort of justice without the aid of a lawyer and he could not procure a lawyer on his own." Farmer v. Haas, 990 F.2d 319, 323 (7th Cir.1993).
 
 
 11
 District courts are authorized to request that counsel represent litigants pursuant to 28 U.S.C. § 1915(e), but civil litigants do not have a constitutional or statutory right to counsel. Farmer, 990 F.2d at 323. The inquiry is whether the plaintiff is competent to represent himself and, if not, whether the assistance of counsel would have made a difference in the outcome. Id. at 322. Despite Arbogast's belief that his alcoholism prevents him from adequately prosecuting his claim, his filings in the district court show a good grasp of the applicable law and an ability to pursue his objectives through various motions and responsive briefs. The district court properly found that Arbogast was competent to handle this case, which is not particularly complex. Moreover, Arbogast does not appear to have tried to retain counsel on his own, a necessary prerequisite to the appointment of counsel. See id. at 323. Arbogast's applications to proceed in forma pauperis reveal that his yearly salary is approximately $30,000, making it reasonable to assume that he could afford to hire counsel. The district court did not abuse its discretion in denying the motion requesting counsel, and we affirm its decision.
 
 Recusal of the District Judge
 
 12
 Last, Arbogast argues that his case should be remanded for additional discovery on "recusal issues." Arbogast has become suspicious of the district judge's impartiality based on two circumstances that seem suggestive to him: years ago, the district judge may have attended basketball games with one of Arbogast's former bosses, and the district judge is on the board of Bradley University.[2] After the district judge granted summary judgment in favor of ABP, Arbogast filed two motions seeking additional information regarding these circumstances. We have no jurisdiction to hear an appeal from the denial of these motions, as they were made after the entry of the final order appealed from, and Arbogast filed no separate notice of appeal from the denial of his post-judgment motions. United States v. City of Chicago, 870 F.2d 1256, 1258-59 (7th Cir.1989). Even if we were permitted to consider the recusal issue, however, Arbogast's suspicions are far from meeting the standards that would necessitate disqualification of a judge.
 
 
 13
 This court takes seriously the possibility of actual impropriety or the appearance of impropriety in judges. See, e.g., In re Hatcher, 150 F.3d 631, 1998 WL 411311 (7th Cir. May 13, 1998). But nothing in the record supports the disqualification of Judge McDade. Claims that a judge should be disqualified from hearing a case are evaluated under 28 U.S.C. § 455. Section 455(b) enumerates specific circumstances requiring disqualification, such as involvement in the case by a close relative, or financial interest in the subject matter of the case. None of the subsection (b) circumstances are present here. Subsection (a) takes a broader approach, requiring a judge's disqualification "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard of § 455(a) is an objective one that asks "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." Hatcher, 150 F.3d at ----, 1998 WL 411311 at * 7 (quoting Hook v. McDade, 89 F.3d 350, 354 (7th Cir.1996)).
 
 
 14
 Neither of the circumstances to which Arbogast points--socializing with one of Arbogast's former bosses, and serving on the board of Bradley University--would cause a reasonable person to think that the district judge was likely to ignore the merits of Arbogast's claim. First, it is unclear what bias could be inferred from the possibility that the district judge knows one of Arbogast's former bosses. Judges engage in human contact just like other people; such contact does not make them unfit to perform their judicial duties. As a former Chief Judge of this court aptly stated:
 
 
 15
 That a judge knows someone does not require recusal. An active lawyer who takes the bench will always know a good many of the lawyers that appear in court and is also likely to know some persons who are parties or who work for corporations or agencies who are parties. The judge must look to the strength of the relationship to decide recusal.
 
 
 16
 In re Complaint Against Sarah Evans Barker, No. 93-7-372-5, at 2 (Judicial Council of the Seventh Circuit May 26, 1993), quoted in Sexson v. Servaas, 830 F.Supp. 475, 478 (S.D.Ind.1993); see also United States v. Kehlbeck, 766 F.Supp. 707, 712 (S.D.Pa.1990) ("A judge must have neighbors, friends, and acquaintances, business and social relations, and be a part of his day and generation.... [T]he ordinary results of such associations and the impressions they create in the mind of the judge are not the personal bias or prejudice to which the recusal statute refers." (quotation marks and citation omitted)). Arbogast's former boss ceased to work for ABP in 1984, and thus is highly unlikely to have personal knowledge of any facts disputed in this case. The district judge was in the best position to evaluate the strength of his relationship with Arbogast's former boss, and we see no reason to question that evaluation.
 
 
 17
 Arbogast's anxieties about the judge's participation on the board of Bradley University are even more far-fetched. Bradley University is not a party to this case. Arbogast's argument that his claim has implications that affect all institutions of higher education is nonsense. A victory for Arbogast on his ADA claim would not affect even the institution of higher education most directly involved with the case (Illinois Central College), let alone Bradley University or any other college or university. Arbogast's arguments for the disqualification of the district judge amount to no more than irrational speculation. There being no basis for disqualification, the district judge properly refused to recuse himself and denied Arbogast's motions to modify the record.
 
 
 18
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 On appeal, Arbogast complains that the district court should have allowed for more discovery on the issue of whether ABP treated non-disabled trainees more favorably than him. (This discovery issue is not among the issues on appeal formally identified by Arbogast, but he devotes a portion of his opening brief to it, and we therefore address it.) Unfortunately for Arbogast, he never raised this issue in the district court. Litigants who require more discovery in order to combat a motion for summary judgment have a well-established procedural tool handy: a motion under Rule 56(f) of the Federal Rules of Civil Procedure. Even a pro se litigant, especially one like Arbogast who effectively communicated with the district court on several other issues, may be expected to be aware of the availability of this procedure. Arbogast never filed a Rule 56(f) motion, nor did he inform the district court in any other manner that he needed more discovery on any issue. Issues that are not raised in the district court in response to a motion for summary judgment are waived on appeal. Arendt v. Vetta Sports, Inc., 99 F.3d 231, 237 (7th Cir.1996). We therefore do not reach the question of whether additional discovery was required before the entry of summary judgment
 
 
 [2]
 Arbogast also suspects the district judge of gathering information about the case from extrajudicial sources because, in its Order and Opinion dated September 16, 1997, the district court described Arbogast as having been fired twice from ABP "as a result of his alcohol abuse," a description that is not fully supported by the record. Instead, the record contains reasons for only the first discharge in February 1988, when Arbogast was fired for seeking treatment for alcoholism. The record does not contain any reason for the second discharge in June 1992, after which Arbogast began drinking again. Nonetheless, there is no hint that the district court's misstatement was based upon extra-judicial sources. Instead, it is almost certainly a simple misreading of the record and as such does not provide a basis for disqualification