**EL FENIX DE PUERTO RICO, Plaintiff,**

v.

**The M/Y JOHANNY, et al., Defendants.**

**Civil No. 90–1638 (DRD).**

United States District Court,
D. Puerto Rico.

Dec. 3, 1996.

Paul E. Calvesbert–Borgos, Fernando D. Castro–Maldonado, Calvesbert, Alfaro & Lopez–Conway, San Juan, PR, for Plaintiff.

Jorge Calero–Blanco, McConnell Valdes, San Juan, PR, for Defendants.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

On remand by order of the U.S. Court of Appeals for the First Circuit, *El Fénix de*

*Puerto Rico v. The M/Y JOHANNY,* 36 F.3d 136 (1st Cir.1994), there is pending before the Court plaintiff's motion under Fed. R.Civ.P. 59 to alter and/or amend the judgment (Docket No. 97). Plaintiff, El Fénix de Puerto Rico, requests that the judgment entered in this admiralty case on February 19, 1993, be vacated and a new trial be set because, pursuant to 28 U.S.C. 455(a), the judge who heard the earlier trial should have disqualified himself from participating in that proceeding.

## I.  Facts

El Fénix de Puerto Rico, an insurance company, issued an "all-risks" marine insurance policy on the motor yacht JOHANNY, which was owned by defendant Aurelio Varona–Pérez. On November 14, 1989, the JOHANNY was lost at sea, and the wreck has never been found. Alleging that Varona had intentionally scuttled the vessel, El Fénix filed this admiralty action seeking damages and a judicial declaration that the loss of the JOHANNY was not covered under the insurance policy. Varona, in turn, filed a counterclaim for a declaration that the loss was covered by the insurance policy. The case went to trial, and on February 19, 1993, the district court (Acosta, J.) entered judgment in favor of Varona.

The Court of Appeals set forth a summary of the facts found by the district court in the light most favorable to the judgment, as follows:

In the wake of Hurricane Hugo, which struck Puerto Rico in September 1989, Varona noticed a slight "vibration" in the JOHANNY. On November 14, 1989, Varona and his brother, a professional marine mechanic, set off from the Cangrejos Yacht Club in San Juan for the port of Fajardo, Puerto Rico, to have the boat drydocked for repair. Prior to departing San Juan Harbor, Varona's brother inspected the JOHANNY's underwater running gear, and, finding nothing amiss, concluded that it was safe to proceed.

Approximately one hour into the voyage, however, Varona noticed that the JOHANNY was riding abnormally low in the water. Upon investigation, Varona's brother discovered two to three feet of water in the engine compartment. Varona issued Mayday calls, but was unable to contact either the United States Coast Guard or his yacht club in San Juan. The source of the leak was not located and, within thirty minutes after discovery of the flooding, the two engines stopped simultaneously, apparently as a result of the rising water.

With the JOHANNY rapidly taking on water, Varona and his brother disembarked into a small dinghy, intending to return to San Juan, summon assistance and attempt to salvage the JOHANNY. The outboard motor of the dinghy malfunctioned, however, and since it would operate only intermittently it took almost three hours to reach the nearest point of land, where Varona reported the incident to the Puerto Rico Maritime Police. Neither Varona nor his brother saw the JOHANNY sink, and marine salvage surveyors have never been able to locate her.

*El Fénix de Puerto Rico,* 36 F.3d at 138.

The Court is not now concerned with the merits of the dispute, but rather with the question whether the district judge should have withdrawn from this case, and, if so, whether the proper remedy is for this Court to vacate the judgment. This question arises because the presiding judge invited a friend to observe the trial. The friend, Mr. Bob Fisher, is an avid yachtsman, and the judge thought his friend would enjoy watching a trial in admiralty.

During the first day of trial, Mr. Arturo A. Vaello, Jr., a marine surveyor providing expert testimony on behalf of the plaintiff, noticed that Fisher was in the courtroom. The two men knew each other beforehand, and in casual conversation, Fisher told Vaello that the district judge had "asked him to sit through the trial and listen to the evidence presented by the parties." Vaello promptly told El Fénix's counsel of this conversation.

El Fénix did not immediately raise the issue of recusal with the judge. Instead, ten days after judgment was entered in favor of Varona, El Fénix filed a motion under Fed. R.Civ.P. 59 to alter and/or amend the judgment. El Fénix argued that even though "it

had 'no specific knowledge' that the judge was not impartial, it hypothesized that the [district] judge might have consulted Fisher in arriving at a judgment in the case," and therefore "contended that the Vaello [testimony] gave rise 'to the possibility of an 'appearance' of partiality' that might require disqualification under 28 U.S.C. § 455(a)." *El Fénix de Puerto Rico,* 36 F.3d at 139. The district court initially granted the motion, vacated the judgment, and transferred the case to another judge.[1] After receiving Varona's motion for reconsideration, the district judge vacated the recusal order and reinstated the judgment, and El Fénix appealed.

On appeal, the Court of Appeals vacated the reconsideration order and the portion of the recusal order which set aside the final judgment. The Court of Appeals held that the district judge had abused his discretion in both issuing his original recusal order and in later reconsidering the order, the first because the motion for recusal had not been supported by sufficient facts, and the second because once a judge has recused himself from a case, even if incorrectly, he should generally not take any other action in that case. The First Circuit therefore ordered that "[a]fter permitting the parties a reasonable opportunity to supplement or amend their postjudgment motions and responses, the district court should consider El Fénix's timely motion for new trial under Rule 59 based not only on 28 U.S.C. § 455(a) but on the various substantive challenges asserted in the original motion." *El Fénix de Puerto Rico,* 36 F.3d at 142.

On remand, the case was reassigned to the undersigned. El Fénix then questioned Fisher at an oral deposition about whether he had discussed the testimony and other evidentiary facts that he had heard at trial with the district judge before judgment was entered. Fisher's statements at his deposition indicate that he did discuss at least some disputed evidentiary facts with the district judge. First of all, Fisher stated that he met with the district judge in chambers or at lunch various times during the trial. In addition, when asked whether he did discuss evidentiary matters with the district judge, Fisher answered:

"Yes, I could not see how anybody could ever make a determination in a case like this; there was no physical proof, the vessel was never recovered to look for any kin[d] of evidence, just verbal testimony of both parties and he would have to determine it, I did not see how anybody could make a determination in the case. I found it very unusual."

*Deposition,* p. 22. Specifically regarding the testimony of Luis Varona, the defendant's brother, Fisher also stated that:

"I was discussing this with my wife, and I might have mentioned it in front of the judge also, that I felt his testimony seemed more knowledgeable, he was making a good case for himself, which was the first tangible thing that came up, you know, the description of the dinghy riding to shore and so forth, and the problems that he was having trying to get [the motor] ... and to get the leaking stopped and one thing and another, and from my little experience with leaking boats, I could sympathize with him."

*Deposition,* p. 23–24. Later on, Fisher went on to state that:

"I might have mentioned to him that I thought Luis's testimony [Varona's brother] was more credible than what had gone on before, but that is the extent of

---

1. The text of Judge Acosta's recusal order reads, in pertinent part as follows: "The Court invited both Mr. and Mrs. Bob Fisher, long time personal friends, to attend a public trial ... prompted by the fact that the Fishers are both boat aficionados and Mr. Fisher, who is currently retired, would enjoy the trial. To conclude from the presence of Mr. and Mrs. Fisher that the Court somehow surreptitiously connived to seek the opinion of a nonwitness to make its decision is a strained conclusion to say the least. Plaintiff's argument on this issue has the tenor of a dubious strategy influenced by an unfavorable result. The Court's decision in this action, stated for the record at the conclusion of the evidence, was based exclusively on the evidence presented by both parties and in great part based on specific credibility determinations. Nevertheless, given the fact that the impartiality of this judge has been put at issue by plaintiff, I hereby DISQUALIFY myself from further participating in this case. It is further ORDERED that the Judgment issued is hereby VACATED AND SET ASIDE." Order of March 11, 1993.

that.... I might have told him that I felt that he was more credible than any of the.... I do not recall telling him that specifically, but I think I probably did, just in the course of general conversation."

*Deposition,* p. 29–30.

Furthermore, in response to questions regarding his acquaintance with Vaello, Fisher answered that "Vaello had done several surveys on my boats. At the time my insurance was being carried by a company now defunct, I guess, but Rudy Torruella was running this insurance company and he suggested that I use Vaello as a surveyor." *Deposition,* p. 26. In response to the question whether Fisher thought that Vaello's appraisals of the value of Fisher's boats were too low, Fisher answered:

Absolutely, because when I buy fifteen thousand dollars worth of sails, I expect to see the cost of the sails represented in the value of the boat, and they never were. They use blue book prices and it does not make any difference what the equipment is on the boat or the additional equipment that is on the boat. It could be a stripped down minimal cruiser with just a main and a foresail and a narrow price range; then you have like I have done, fill it up with additional winches and equipment and very expensive sails and it does not show.

*Deposition,* p. 27. Fisher was then asked whether, for purposes of the report, Vaello had taken the additional equipment installed by Fisher into consideration, and responded "No, he was holding ... the value way down, below what I thought reasonable." *Deposition,* p. 27.

## II. Discussion

The crux of the decision of the Court of Appeals was that the evidence adduced by El Fénix was insufficient to require the district judge's disqualification under 28 U.S.C.

§ 455(a).[2] As that court remarked, "[n]o permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on *unfounded* innuendo concerning the possible partiality of the presiding judge." *El Fénix de Puerto Rico,* 36 F.3d at 140 (emphasis added). The Court of Appeals stressed that "[t]he utter absence of a sufficient factual basis for recusal under subsection 455(a) completely undermined the recusal order." *Id.*

The situation before this Court is substantially different. As noted above, there is evidence before this Court in the form of a deposition, authorized by U.S. District Judge Juan Pérez–Giménez, of the trial judge's friend, Mr. Fisher. At this deposition, Fisher indicated that during the trial he had made a variety of comments to the district judge regarding the testimony and credibility of witnesses. Insofar as the district judge thus received ex parte information regarding disputed evidentiary facts (namely, the credibility of witnesses), his disqualification may have been required pursuant to 28 U.S.C. § 455(b)(1).[3] However, and in any case, Fisher's statements provide an ample factual basis for a reasonable person to question whether the District Court could conduct the proceedings with impartiality, thus requiring the district judge's disqualification under 28 U.S.C. § 455(a).

■ The test of impartiality under § 455(a) is straightforward: "First, a charge of partiality must be supported by a factual basis.... Second, disqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality." *In re United States,* 666 F.2d 690, 695 (1st Cir.1981). *See El Fénix de Puerto Rico,* 36 F.3d at 140.

---

**2.** Subsection 455(a) reads: "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

**3.** In his deposition, Fisher constantly qualified his assertions, which is only to be expected given that the deposition was taken two years after the events in question. The upshot, however, is that it cannot be concluded with certainty that Fisher

commented to the district judge that he found Luis Varona's testimony more credible. Had he done so, then disqualification would have been *required* under § 455(b)(1), which provides that "[the judge] shall also disqualify himself ... [w]here he has a personal bias or prejudice concerning a party, or *personal knowledge of disputed evidentiary facts* concerning the proceeding." (Emphasis added).

However, the correct application of this test requires sensitivity to the values that § 455(a) seeks to promote and protect. The Supreme Court has made it clear that "[t]he problem ... is that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges. The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865, 108 S.Ct. 2194, 2205, 100 L.Ed.2d 855 (1988). Similarly, "subsection [455](a) safeguards not only the litigants' constitutional entitlement to an unbiased adjudication ... but the public's perception of the integrity of the judicial process." *El Fénix de Puerto Rico*, 36 F.3d at 142 n. 7.

In this case, notwithstanding the fact that the district judge denied having sought or relied upon Fisher's opinions in reaching his decision, the facts before the Court create an appearance of partiality that is not easily dispelled. The Court finds it is impossible to ignore Fisher's testimony, in which he states that he most probably *did* inform the district judge that he found Luis Varona's testimony more credible than the other witnesses'. Although there is no evidence that the district judge sought Fisher's opinions, the fact remains that the public could reasonably question whether the district judge did rely on Fisher's appreciation of the testimony. In addition, from the point of view of a reasonable member of the public, the trial judge's denial does not address the possibility that Fisher's biases might have colored the district judge's assessment of the credibility of the witnesses. Such doubts can only increase with the knowledge that Fisher could very well have been biased against Vaello, given the latter's alleged undervaluation of Fisher's yachts. In sum, the introduction of doubt as to the Court's impartiality required

the trial judge's disqualification from further proceedings in that case.

Having found a violation of § 455(a), at least, the Court must determine what remedy is most appropriate.[4] As the Supreme Court has noted, "[a]lthough § 455 defines the circumstances that mandate disqualification of judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty. Congress has wisely delegated to the judiciary the task of fashioning the remedies that will best serve the purpose of the legislation." *Liljeberg*, 486 U.S. at 862, 108 S.Ct. at 2204. In that same case, the Court concluded that "in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id.* at 864, 108 S.Ct. at 2204.

In the case at hand, the proper remedy is for this Court to order that the judgment issued on February 19, 1993, be vacated. First, the risk of injustice is greater if the Court does not vacate the judgment than the reverse, for if the judgment is not vacated, then the plaintiffs will have to pay defendants the full value of the policy. Second, providing relief in this case will not lead to unfairness in future cases; to the contrary, future litigants will benefit from having a bright-line rule to guide them in dealing with similar situations. Third, the very credibility of the Court is at risk here; the public must be reassured that judicial decisions are based exclusively on evidence presented on the record where all litigants are granted the opportunity to cross-examine. Finally, in a trial such as the one at bar, where no physical evidence is available and the Court must

---

4. The Court notes in passing that El Fénix's motion was timely. *El Fénix de Puerto Rico*, 36 F.3d at 141 n. 6. *See, e.g., E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir.1992). Counsel for El Fénix was informed for the first time of Fisher's presence at trial at the end of the second day in a four day trial. Moreover, there was not sufficient evidence to sustain a recusal order at that time, as the Court

of Appeals so clearly stated. Such evidence only became available after Fisher was deposed. In fact, El Fénix had requested in its recusal motion leave to depose Fisher as alternative relief, in case the district judge declined to recuse himself. Given that the recusal motion was granted, no deposition was necessary nor possible until after the case was appealed and remanded.

therefore decide the result solely on the basis of credibility determinations, anything that might cast doubt on the impartiality of such determinations places the fairness of the entire trial in jeopardy.

### III. Conclusion

Fisher's deposition statements leave the Court with no alternative. For the reasons discussed above, the judgment entered in this case on February 19, 1993, is vacated, and a new trial shall be held. The parties are hereby ordered to attend a status/scheduling conference in chambers on December 27, 1996, at 3:00 p.m., to discuss any other pending matters and prepare a new schedule for trial.

IT IS SO ORDERED.