**UNITED STATES of America,
Plaintiff,**

**v.**

**Rene VAZQUEZ–BOTET and Marcos Morell–Corrada, Defendants.**

**Criminal No. 04–160 (JAF).**

United States District Court,
D. Puerto Rico.

July 21, 2006.

Mary K. Butler, U.S. Dept of Justice Public Integrity Section, Matthew C. Solomon, U.S. Department of Justice, Washington, DC, for Plaintiff.

Edgar R. Vega–Pabon, Vega Pabon, Rodriguez Encarnacion & Lopez Covas, San Juan, PR, Howard M. Srebnick, Black, Srebnick, Kornspan and Stumpf, Miami, FL, for Defendants.

## OPINION AND ORDER

FUSTÉ, Chief Judge.

Before this court is Defendant Vázquez–Botet's motion requesting that the undersigned recuse himself from presiding over his upcoming criminal trial scheduled to start on September 25, 2006. *Docket Document Nos. 255, 257.* Defendant claims that because the undersigned's wife has provided legal representation to two individuals who the government may call to testify in Defendant's trial, she is "acting as a lawyer in [this] proceeding," requiring recusal under 28 U.S.C. § 455(b)(5)(ii) (1993 & Supp.2006). Defendant further avers that she has an "interest that could be substantially affected by the outcome of [this] proceeding," also requiring recusal under 28 U.S.C. § 455(b)(5)(iii) (1993 & Supp.2006). Defendant also proposes that the undersigned must disqualify himself under 28 U.S.C. § 455(b)(5)(iv)(1993 & Supp.2006) because his spouse is "likely to be a material witness in the proceeding." Finally, Defendant requests that the undersigned disqualify himself under 28 U.S.C. § 455(a)(1993 & Supp.2006), which requires a judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned."

Whether a judge must recuse himself when his spouse has represented individuals who may be called to testify in a trial before him presents matters of statutory construction and policy considerations. We decide this matter conscious of two vitally-important principles: First, that courts must not only be, but seem to be, free of bias of prejudice, and second, that courts must avoid allowing recusal on demand to provide litigants with a veto against unwanted judges. *In re Boston's Children First,* 244 F.3d 164, 167 (1st Cir. 2001) (citations omitted).

## I.

### Factual and Procedural Synopsis

The undersigned judge's spouse is a practicing attorney in San Juan, Puerto Rico. On March 26, 1990, the undersigned entered a "Permanent Order of Disqualification" which instructed the Clerk of Court to disqualify him as a matter of course in all cases in which she appears as counsel of record. *Docket Document No. 257.*

Gregory Laracy, who has been identified as a subject of the United States' investigation of the Super Aqueduct Project, used the judge's spouse's services prior to the issuance of the above-captioned indictment. Laracy has been informed that the government has no interest in prosecuting him, but that he may be called to testify at the Defendant's upcoming trial.

Another potential government witness, José M. Ventura, has also used the judge's spouse's services, beginning in connection with his March 4, 2003, sentencing hearing on charges unrelated to the instant indictment, Criminal No. 02–301(PG). If Ventura is called and permitted to testify, it would be as a Fed.R.Evid. 404(b) witness, concerning other alleged bad acts of the Defendant. *Docket Document No. 259* ("[Ventura] will testify, pursuant to Federal Rule 404(b), to other, unrelated schemes Vázquez Botet engaged in.").

On April 8, 2004, the same day that the grand jury returned the indictment against Defendant and Marcos Morell–Corrada, this case was randomly assigned to Judge Juan Pérez–Giménez. Judge Pérez–Giménez later was recused, by First Circuit mandamus, because his "impartiality might reasonably be questioned" under 28 U.S.C.

§ 455(a), *In re United States,* 441 F.3d 44 (1st Cir.2006), and on May 16, 2006, the undersigned became the second judicial officer assigned at random to preside over the trial.

The reassignment of this case was scrupulously performed, following the strictures of this District's electronic case assignment system. The actual draw was delegated to only two senior personnel at the Clerk's office, the Chief Deputy Clerk and the Systems Administrator. All electronic steps generated by the process were recorded for examination by a higher court if the need would arise. Every single active judge and all eligible senior judges drawing criminal cases participated in the reassignment process. Furthermore, the undersigned, as Chief Judge of the District Court, consulted the particulars of the reassignment process with the Chief Judge of the Court of Appeals, Michael Boudin, whose advice was strictly followed.

During a May 25, 2006, Status Conference, counsel for Defendant tried to present the matter of the undersigned's recusal privately at the bench, out of public earshot. Counsel was instructed to file any recusal motion in writing, and was provided with time, until June 6, 2006, to expand upon his preliminary arguments with a supplemental memorandum of law. *Docket Document Nos. 255, 257.* Codefendant Morell–Corrada filed a motion on June 8, 2006, declining to join Defendant's recusal motion. *Docket Document No. 258.* The government filed a memorandum in opposition to the recusal motion on June 16, 2006. *Docket Document No. 259.*[1] Defendant replied to the government's opposition on June 26, 2006, and June 28, 2006. *Docket Document Nos. 262, 264.*

---

1. The court adopts the well-reasoned argument presented by the Appellate and Public Integrity Sections of the U.S. Department of Justice in the form of the government's re-sponse. *Docket Document No. 259.* For the sake of brevity, we only expand as required by the factual and legal statements made by the movant Defendant Vázquez–Botet.

## II.

### *Analysis*

### A. *Mandatory Disqualifications*

#### 1. *Section 455(b)(5)(ii): "Acting as a Lawyer in the Proceeding."*

■ Defendant contends that § 455(b)(5)(ii), which provides that a judge shall disqualify himself if his spouse "is acting as a lawyer in the proceeding," requires the undersigned to recuse himself in this case because his spouse has, in the past, provided legal representation to potential witnesses Laracy and Ventura. Relying on *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255 (5th Cir.1983), Defendant submits that under § 455(b)(5)(ii), it makes no difference whether an attorney represents a witness or a party in the proceeding. The government disagrees, stating that the fact that neither Ventura nor Laracy are parties in the pending criminal trial forecloses Defendant's § 455(b)(5)(ii) argument. The truth of the matter is that neither Ventura nor Laracy are parties to this proceeding. if called, they will be witnesses. Section 455 itself draws a distinction between a "party" and a material witness. *See Docket Document No. 259, Part I* (the government's response, contrasting subsections (b)(5)(I) and (b)(5)(iv)).

In *McCuin*, although a judge's brother-in-law had long participated in discovery proceedings relating to employment-discrimination lawsuits before the judge, it was not until six years after the lawsuits had been filed that the corporate defendant finally added the judge's brother-in-law as its counsel of record and invoked § 455(b)(5)(ii) recusal. In deeming § 455(b)(5)(ii) recusal appropriate under the circumstances of that case, the Fifth Circuit stressed that it did not premise its decision on the mere fact that the judge's brother-in-law had been officially enrolled as counsel, but rather on the fact that the judge's brother-in-law had been participating in the cases. According to the Fifth Circuit, then, "one 'acts as a lawyer' within the meaning of § 455(b)(5)(ii) when he actually participates in the case," regardless of whether or not he is enrolled as counsel-of-record. 714 F.2d at 1260.

We are unconvinced that we should extend *McCuin*, which quite properly prohibits a judge's relative from participating, on the record or not, in ongoing litigation before that judge, to stand for a far more sweeping proposition: That an attorney-spouse's past representation of a non-party witness means that the spouse is "acting as a lawyer in the proceeding." *See also, In re Hatcher*, 150 F.3d 631, 632 (7th Cir.1998) (recusal not warranted under § 455(b)(5)(ii), when judge's son had interned with the U.S. Attorney's office and assisted with the prosecution of petitioner's co-conspirator indicted on nearly identical charges as petitioner).

We are mindful that under 28 U.S.C. § 455(d)(1), a "proceeding" includes "pretrial, trial, appellate review, or other stages of litigation." However, with respect to the litigation encompassed by this indictment, the judge's spouse has not participated.

In the first place, her representation of Laracy—a non-party witness—pre-dates the instant indictment, as well as the reassignment of the matter to the undersigned. The judge's spouse, in her role as Laracy's attorney, has never appeared in this criminal case. The parties indicate that Laracy has testified before a Grand Jury. His attorney, who could not, by law, appear at that Grand Jury session, cannot be said to be an attorney of record in the resulting criminal case.

We note that no judge presides over a federal grand jury, which "is a constitu-

tional fixture in its own right" and not an arm of the district court. *In re United States*, 441 F.3d at 57. Thus, the grand jury remains functionally and constitutionally "at arm's length" from the judicial branch. *Id.* Given the limited role judges play in federal grand jury proceedings, and given the fact that the judge's spouse's representation of Laracy during the pre-indictment stages of this case precedes the undersigned's involvement in the current case by over two years, we do not think that her representation of Laracy falls under § 455(b)(5)(ii)'s meaning of "proceedings" and, therefore, does not warrant the undersigned's mandatory recusal under § 455(b)(5)(ii).

Defendant conjectures that if Laracy were to, for some reason, refuse to testify, and if he were to be charged with contempt, and if he were to contact the judge's spouse to represent him again, this scenario would present an irreconcilable conflict. Defendant's concern over this unlikely sequence of events is misplaced. In the first place, this speculation is far too tenuous to trigger mandatory recusal required by § 455(b)(5)(ii). *See In re Hatcher*, 150 F.3d at 637 ("[p]recisely because § 455(b) sets forth mandatory disqualification rules, courts have read its requirements strictly, so that both judges and litigants will know when a judge must step aside")(internal citations omitted). Second, and more important, the judge's spouse is simply foreclosed from appearing as Laracy's attorney in any proceeding before the undersigned. Laracy's inability to retain her services in connection with some future litigation before this court does not translate to the Defendant's ability to obtain the undersigned's disqualification.

Defendant also contends that, in the case of Ventura, the undersigned's spouse has also acted as a lawyer in the proceeding. Participation as Ventura's counsel during sentencing in an unrelated proceeding, Criminal No. 02–302(PG), *see Attachments*, cannot under any circumstances be deemed "acting as a lawyer" in this matter. Defendant makes much of a December 3, 2004, letter written by the spouse to counsel for the Defendant on behalf of Ventura. The letter makes reference to a November, 2004, communication from the Defendant to Ventura, in which the Defendant requests $10,000,000 as a payment for damages allegedly inflicted by Ventura's testimony about the Defendant in various public forums in Puerto Rico. Because official testimony is immune from civil damages, counsel for Defendant was told that the letter from Defendant to Ventura may constitute an improper attempt to obtain money in exchange for not filing a lawsuit that has no legal basis. The undersigned's spouse indicates in her letter that the exchange of correspondence would be referred to the prosecutor in the instant case (when the matter was assigned to a different judge).

Critically, the event that precipitated counsel's communication with Defendant's lawyers was attributable solely to the Defendant himself. He directly contacted a potential witness. He demanded payment in exchange for abstaining from filing a lawsuit. That his counsel received a letter in reply from the potential witness' attorney, in response to his own unsolicited demand, bears no relationship to an attorney participating—on the record or off—in a pending court proceeding. Ventura's counsel did not advocate anything before this court, and the record reflects that the prosecutor took no action on the letter. The entire incident does not even resemble involvement in an actual, pending legal proceeding, and cannot be the basis of this court's recusal.

## 2. *Section 455(b)(5)(iii) "Interest that could be substantially affected by outcome of the proceeding."*

Defendant also invokes § 455(b)(5)(iii), which provides that a judge shall recuse himself if his spouse "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." Disqualification under this circumstance is mandatory and not waivable by the parties. 28 U.S.C. § 455(e).

Defendant states that he has been unable to find any recusal precedent where a judge's lawyer-spouse had represented a likely witness, and suggests that this means that other judges facing this scenario have thought recusal to be so obviously the correct course of action that they have simply done it without writing anything to explain why. We disagree with this speculative conclusion and proceed to a legal analysis.

We first note that Defendant's allegation that the undersigned's spouse has an interest in the outcome of these proceedings stems from legal services she has offered to Laracy and Ventura in the past. In this regard, we find that *S.J.Groves & Sons, Co. v. Int'l Bhd.*, counsels against recusal. 581 F.2d 1241 (7th Cir.1978). In that case, the Seventh Circuit held that a judge did not have to recuse himself under § 455(b)(5)(iii) when his brother was a senior partner in a law firm which had represented the plaintiffs in the initial stages of an action, but which had withdrawn as plaintiffs' counsel where, prior to the law firm's recusal, no discretionary rulings were required of the judge. *Id.* at 1247. The brother's firm retained no interest in the case, and there was no evidence that the judge prompted the withdrawal of his brother's firm through delay or any other means. *Id.* at 1248.

Under the principles set forth in *S. J. Groves*, § 455(b)(5)(iii) recusal is inappropriate in the present case where: (1) the spouse has not represented any party, but only witnesses; (2) the counsel offered to the witnesses occurred at a time when the proceedings had not been assigned to the undersigned; and (3) there is no allegation or evidence, only hypothetical speculation, that the spouse continues to offer Laracy and Ventura counsel relating to their potential testimony in this trial.

Defendant's § 455(b)(5)(iii) challenge is, at bottom, that the spouse has an interest in his conviction by virtue of her prior representation of Laracy and Ventura. He makes several arguments with respect to what this interest is, and we shall take each of his propositions in turn.

### a. *The "Immunity Agreement," or Standard Proffer Letter, as the Case May Be.*

■ Defendant first alleges that the spouse has an interest in his conviction arising out of Laracy's so-called immunity agreement with the government. Defendant suggests that Laracy will continue to contract the spouse to advise him on how to best comply with his obligation to testify under his immunity agreement's terms, and that the undersigned will consequently treat Laracy with kid gloves, issuing relevance and scope determinations detrimental to Defendant's cross-examination of him. *Id.*

Defendant's argument as to the spouse's interest is a classic example of the "edifice of conjecture" that the Fifth Circuit in *Sensley v. Albritton* held cannot justify § 455(b)(5)(iii) recusal. 385 F.3d 591, 600 (5th Cir.2004); *see also In re United States*, 158 F.3d 26, 30 (1st Cir.1998)("[C]ompulsory recusal must require more than subjective fears, unsup-

ported accusations, or unfounded surmise.").

In *Sensley*, the wife of the federal judge was employed as a state district attorney in the office that was representing defendants before him, and the court summarized the plaintiff's argument in favor of § 455(b)(5)(iii) recusal as follows: "If [the district attorney] loses this case, it might adversely affect his political popularity; and if it adversely affects his political popularity, he might lose his next election; and if he loses his next election, [the judge's wife] might lose her job if the new district attorney chose not to retain her." 385 F.3d at 600. All of these if's, according to the court, constituted layers of speculative reasoning that did not establish the judge's wife had an interest in the outcome of the proceedings before him requiring § 455(b)(5)(iii) recusal.

Defendant similarly layers "several speculative premises on top of one another to reach a speculative conclusion" here. *Id.* The Defendant supposes that the terms of Laracy's immunity agreement with the government are sufficiently complex to require him to secure legal counsel to maneuver them; and then he imagines that Laracy will wish to hire the undersigned's spouse, and that she would then accept such an invitation. We think that Defendant's speculative approach to judicial recusal is improper under *Sensley*.[2]

Further, the court has reviewed the proffer letter signed by Laracy and his counsel, as well as other correspondence with the United States Attorney's Office, provided as Exhibits to Defendant's *Reply. Docket Document No. 262.* Nothing in the standard proffer letter, or the additional correspondence confers any interest whatsoever upon the witness' attorneys. The

proffer letter obligates Laracy, not his attorneys, to truthfully provide information; the correspondence from the prosecutor indicates that Laracy, not his attorneys, is the subject of an investigation and that the United States has no interest in prosecuting him. Defendant's notion that a witness' attorney has an "interest that could be substantially affected" by the *witness'* compliance or non-compliance with the terms of a proffer letter is misplaced.

Even if we were to agree with Defendant that the undersigned's spouse has an interest in some aspect of these proceedings, which we do not, we emphasize that § 455(b)(5)(iii)'s recusal standard is whether a judge's relative has an interest "that could be substantially affected by the outcome of the proceeding." We fail to see how the undersigned's spouse's alleged interest in this case—that Laracy understand and testify according to the terms of his immunity agreement—could be affected at all, much less substantially, by Defendant's conviction or acquittal, which would occur long after Laracy's compliance with his immunity agreement's terms was a closed issue.

### b. *Victim Restitution*

■ Defendant next argues that the spouse has an interest in the outcome of these proceedings because Laracy and Ventura may be entitled to victim restitution and the undersigned may be called upon to determine any award paid to them. The government has plainly announced that this is a criminal case where "[n]either Ventura nor Laracy has any right" to restitution, *Docket Document No. 259.* This ends the matter; we understand that this court will not be called upon to make

---

2. Because we premise our ruling solely on the improbability of such a sequence of events, we make no ruling as to whether a witness can contact a presiding judge's lawyer-spouse for legal advice.

any restitution determination in favor of witnesses. A reading of 18 U.S.C. §§ 3663 and 3663A confirms the government's assertion in this respect. Simply, restitution is not mandatory here.

Defendant futilely cites to *Potashnick v. Port City Const. Co.*, 609 F.2d 1101 (5th Cir.1980). In *Potashnick*, the Fifth Circuit ordered a district judge to recuse himself under § 455(b)(5)(iii) because his father was a partner sharing in the profits of the law firm appearing before him, even though the firm was working for a fixed-fee that would not have changed no matter the outcome of the case. *Id.* at 1107. The Fifth Circuit held that § 455(b)(5)(iii)'s language required recusal when a judge's lawyer-relative had an interest that *could be* substantially affected by the outcome of a proceeding. Because the judge's father's firm could have made its fee arrangement a contingency that would have been affected by the proceeding's outcome, according to the *Potashnick* court, the judge must recuse under § 455(b)(5)(iii). *Id.* at 1113–14.

*Potashnick's* holding does not extend to this case. Restitution to Laracy and Ventura has been foreclosed as a possibility and the spouse, as counsel for either, can garner no financial benefit from the Defendant's acquittal or conviction.

Defendant also claims that the Fifth Circuit's holding in *McCuin, supra,* bolsters his case for § 455(b)(5)(iii) recusal today. In *McCuin*, a judge's brother-in-law enrolled as counsel of record for the defendants in a proceeding before him. *Id.* at 1258. The Fifth Circuit said that § 455(b)(5)(iii) recusal was clearly required given the judge's brother-in-law's intent to directly represent one of the parties: "The judge may not wait to see what part the lawyer-relative will play." *Id.* at 1260.

We fail to see how *McCuin*, which presents a much more cut-and-dry recusal sce-nario, connotes that the undersigned's spouse has an interest in the outcome of the case before us. We accept that recusal would be required if the spouse were a counsel of record. She plays no such role, however, and consequently § 455(b)(5)(iii) recusal is unwarranted. *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988), cert. denied, 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989)("where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality").

Perhaps Defendant's real concern is that his potential conviction in this case might work to preclude issues in any civil lawsuit that Laracy or Ventura might file against him in the future. Imagining that Laracy or Ventura hired the spouse to represent them in that action, Defendant might say, the spouse could benefit from issues precluded by the disposition of the present case and, therefore, has an interest in Defendant's conviction. This argument "essentially invites us to speculate as to whether a district judge would decide issues in a case before him in a particular way in hopes of persuading a different judge presiding over a separate [but related] case to reach the same decision." *In re Kansas Public Employees Retirement System*, 85 F.3d 1353, 1362 (8th Cir.1996) (recusal not required where a judge's rulings in the case before him may have had a collateral effect upon issues in a separate declaratory judgment action implicating a company in which the judge owned stock). We reject the "invitation to engage in such unsupported conjecture;" the alleged interest is "too remote, speculative, and contingent to be 'an interest that could be substantially affected by the outcome of the proceeding.'" *Id.* (quotations omitted); *United States v. Mosesian*, 972 F.2d 1346 at 1992 WL 197408, *5 (9th Cir.1992)(re-

jecting recusal movant's "vague allegation" that the profits earned by the judge through his investments with former law partners will increase if the conviction in the case before him stood, holding that "this imagined scenario is nothing more than a trivial or insignificant matter that merely furnishes a springboard for speculation" insufficient to require recusal) (citations omitted).

### 3. Section 455(b)(5)(iv) "Likely to be a material witness in the proceeding."

■ In his argument that the undersigned must recuse himself pursuant to § 455(b)(5)(iv), which provides for recusal when a judge's spouse is "likely to be a material witness in the proceeding," Defendant submits that the undersigned's spouse, as one of the architects of Laracy's agreement with the government, will likely have to testify at trial. *Docket Document No. 264.* Defendant argues that she will be needed to testify about: (I) Laracy's purported bias in favor of the government; (ii) the process by which Laracy reached an immunity agreement to avoid criminal exposure; (iii) the criminal conduct that concerned Laracy when he decided to have an attorney negotiate a deal for him; (iv) the government representations to the attorney prior to Laracy's testimony in front of the grand jury; and (v) what agreements currently exist between Laracy and the Public Integrity Section of the Department of Justice. *Id.*

Defendant claims, on the basis of *Giglio v. United States,* and its progeny, that Laracy's attorney is a material witness to the proceedings. 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (U.S.1972). We agree with Defendant that the government has a responsibility to produce material evidence relevant to its negotiations and final agreement with Laracy, *see United States v.* *Sudikoff,* 36 F.Supp.2d 1196, 1198 (C.D.Cal.1999), and that such an agreement is an admissible topic for cross-examination as it is relevant to Laracy's credibility. *Giglio,* 405 U.S. at 154–55, 92 S.Ct. 763. We reject Defendant's contention that a witness' attorney would be a material witness to the current proceeding.

A material witness is one who can testify about matters having some logical connection with the consequential facts of a case. Defendant fails to establish that a witness' lawyer, bound by the attorney-client privilege, could testify as to the individual's credibility; that area would be revealed through the cross-examination of Laracy himself. The defense may additionally obtain information regarding the negotiations and agreement in question from the prosecution, which has a responsibility to disclose evidence regarding such negotiations, as suppression of the same may amount to a due-process violation. *Sudikoff,* 36 F.Supp.2d at 1203–04. Certainly, the defense is also entitled to probe, within the constraints of the Federal Rules of Evidence, any prior criminal conduct of a witness. However, nothing in either the case law Defendant cites, nor in the undersigned's twenty-year career on the bench, supports the notion that a witness' attorney could be considered "material" to the consequent facts of this case were she asked for testimony that is readily available through other sources.

Defendant's argument in this regard also proceeds from a faulty premise—that the testimony of the witness was secured because of his bias against the Defendant or in favor of the prosecution. Simply providing information and/or testimony that will be used in a criminal trial by the prosecution does not amount to "bias" or "prejudice." Yet, the Defendant alleges nothing more than a bare-bones and purportedly logical progression: Laracy will

testify as a government witness; he is, therefore, biased. Of course, the Defendant will be permitted to inquire as to every witness' possible bias and prejudice, but it is entirely disingenuous for Defendant to now state, without a shred of evidence in support, that an individual's counsel is necessary to establish what has been only proffered, without any substance.

It also bears noting that the undersigned has tried at least one other very high-profile case with Attorney Srebnick, one of Defendants' lawyers, a case that involved several cooperating witnesses with immunity and/or plea agreements. *United States v. Dubón–Otero, See, e.g.,* 76 F.Supp.2d 161 (D.P.R.1999), *conviction affirmed* 292 F.3d 1 (1st Cir.2002). It was never suggested during that vigorously-defended trial that counsel for those cooperating witnesses appear as witnesses themselves. It smacks of gamesmanship and duplicity for Attorney Srebnick to make such overtures only when the undersigned's spouse has represented a potential witness. Indeed, in twenty years on the bench, other than in § 2255 proceedings when the attorney-client privilege is waived by the petitioner to allow evaluation of ineffective assistance of counsel claims, the undersigned has never had occasion to rule upon a defense counsel's request to sit a witness' attorney to provide testimony.

## B. *Permissive Disqualification: § 455(a)*

"Justice must satisfy the appearance of justice" in order to perform its high function in the best way. *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954). This principle's importance is reflected in 28 U.S.C. § 455(a), which provides that "[a] ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The § 455(a) standard "does not depend on a showing of actual bias," but instead requires "that there be no reasonable question, in any informed person's mind, as to the impartiality of the judge." *In re United States,* 441 F.3d at 68. "A judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Liteky v. United States,* 510 U.S. 540, 557–58, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (Kennedy, J., concurring in the judgment).

"Judges are not to recuse themselves lightly under § 455(a)." *United States v. Snyder,* 235 F.3d 42, 45 (1st Cir.2000). "The unnecessary transfer of a case from one judge to another is inherently inefficient and delays the administration of justice," and gives rise to a duty to sit unless there is some reasonable factual basis to doubt the impartiality of the undersigned's fairness. *Id.* at 46. "The duty to recuse and the duty to sit do not exert equal pull," however. *Id.* In close cases, "doubts ordinarily ought to be resolved in favor of recusal." *Id.*

■ We begin by noting that a reasonable person would be much less likely to question the undersigned's impartiality knowing that his wife is not acting as a lawyer in these proceedings, *supra section II.a.,* that she does not have an interest that is substantially affected by the outcome of this case, *supra section II.b.* and that she is not likely to be a witness in the proceeding, *supra section II.c. See IQ Products, Co. v. Pennzoil Products, Co.,* 305 F.3d 368, 378 (5th Cir.2002) (court satisfied, based on its decision not to recuse under § 455(b)(5)(iii), that district judge was not required to recuse herself); *In re Hatcher,* 150 F.3d at 637("In applying [the § 455(a) ] standard, we are guided

by the situations outlined in § 455(b), because affiliations that pose risks similar to those identified in § 455(b) may call for disqualification under § 455(a).") (quotations omitted). This observation, however, is only instructive, but not dispositive, of whether § 455(a) recusal is required; despite some overlap between § 455(a)'s goals and those of § 455(b)(5)(ii) and (iii), they certainly do not have coterminous standards. *Cf. In re Boston's Children First,* 244 F.3d at 168. Indeed, there have been instances where § 455(a) recusal has been deemed mandatory on facts that have not similarly triggered recusal under §§ 455(b)(5)(ii) and (iii).

Even though "cases implicating § 455(a) are fact-specific and, thus, sui generis ... a rough continuum of sorts emerges from a study of the case law." *In re United States,* 158 F.3d 26, 31 (1st Cir.1998); *See also In re United States,* 441 F.3d at 57.

In *In re Hatcher,* for instance, the Seventh Circuit ruled that a judge's son was not, pursuant to § 455(b)(5)(ii), "acting as a lawyer in the proceeding" involving members of a street gang when he had worked in the U.S. Attorney's office as a legal intern on a related, but separate, criminal trial involving other members of the street gang the summer before. 150 F.3d at 631. The Seventh Circuit still ordered the judge to recuse himself under § 455(a), however, holding that a hypothetical reasonable person would question the judge's impartiality given the fact that an "examination of the two indictments leaves no doubt that functionally they are both component parts of one large prosecution" of the street gang. *Id.* at 638. "Outside observers," the *Hatcher* court remarked in requiring § 455(a) recusal, "have no way of knowing how much information the judge's son acquired about [the] broader prosecution while working on the [first] case." *Id.*

In *Hatcher,* however, it must be remembered that the judge's son was working for the U.S. Attorney's Office such that once the two indictments were viewed as the component parts of one larger prosecution, the hypothetical reasonable person would perceive the judge's son as impermissibly working for the government in the case directly before the judge. This case— where the spouse's representation was provided long before the matter was reassigned to the undersigned—provides no such scenario.

In *El Fenix de Puerto Rico, Inc. v. M/Y Johanny,* a judge was disqualified after he invited a yachtsman friend to sit in on an admiralty trial from beginning to end, and frequently solicited his friend's impressions regarding the proceeding. 954 F.Supp. 23 (D.P.R.1996) (affirming judge's decision to recuse himself on remand from the First Circuit). The friend, who was specially invited by the judge to attend, listened to all of the witnesses and commented to the judge on the testimony and credibility of each. *Id.* at 24. In ordering recusal, the court stated that "[i]nsofar as the district court thus received ex-parte information regarding disputed evidentiary facts (namely, the credibility of witnesses) ... [the friend's] statements provide an ample factual basis for a reasonable person to question whether the District Court could conduct the proceedings with impartiality," especially since it had been revealed that the yachtsman friend had a personal animosity toward one of the witnesses. *Id.* at 26.

We do not think that the above-described representation of Laracy and Ventura poses the same threat of perceived partiality as did the judge's yachtsman friend's active day-to-day participation, founded on his personal interest in admiralty issues, in the *El Fenix* trial. Despite the spouse's affiliation with two potential

witnesses in this case, there is no indication that she will maintain an active presence in the courtroom galley and bubble with the same kind of interested, ex-parte running commentary that marred the public's perception of the *El Fenix* judge's impartiality.

Because "[a] trial judge must hear cases unless some reasonable factual basis to doubt the impartiality of the tribunal is shown by some kind of probative evidence," we deny Defendant's motion for § 455(a) recusal. *El Fenix de Puerto Rico v. M/Y JOHANNY,* 36 F.3d 136, 140 (1st Cir.1994). Defendant has failed to articulate why a reasonable person would think the undersigned biased due to the services his wife offered to Laracy and Ventura, and we cannot think of a sound justification ourselves.

## C. *Additional Disqualification Concerns*

We would finally like to comment briefly on the most recent theory Defendant has presented in support of his recusal motion. In his reply to the government's opposition to his recusal motion filed on June 28, 2006, Defendant envisioned a scenario where the spouse might move the undersigned to impose sanctions against his counsel. Evidently ignoring the prohibition against a spouse petitioning her husband-judge for relief, as proof that this scenario is not just an impossible figment of his imagination, Defendant draws our attention to an incident where the undersigned's spouse made such a motion in a case before Judge Pérez–Giménez. *Docket Document No. 264.*

Coincidentally, in that case, *United States v. Rivera–Rangel,* Criminal No. 02–98, the lawyer against whom the spouse requested sanctions was also Edgar Vega–

Pabón, one of Defendant's lawyers in this case. Some background is required and provided by a review of the docket in that case. Many months after Rivera had been tried, convicted by a jury, then acquitted by the district court pursuant to Fed. R.Crim.P. 29(c), provoking a government appeal and reversal of that ruling,[3] Ventura testified in an investigation of a sitting legislator by the Ethics Commission of the Puerto Rico House of Representatives. Shortly after that legislative testimony, and even though the district court retained no jurisdiction over Rivera's case, Vega supplemented an already-granted motion on the district court docket with accusations that Ventura had perjured himself before the Ethics Commission. Vega did not serve Ventura with a copy of the accusations or file the motion in Ventura's own criminal case—Criminal No. 02–301(PG). Ventura learned about them anyway when they were widely disseminated by Puerto Rico's news media. The undersigned's spouse then moved to intervene in Criminal No. 02–98(PG) and for sanctions against Vega:

> Since this Court has already granted leave for Ms. Rivera to supplement a motion [despite the fact that] it is presently pending before the Court of Appeals for the First Circuit, it is also requested that this Court utilize its supervisory powers and allow Mr. Ventura's request for sanctions to be considered in this forum as well.

*Docket Document No. 262, Exh. B.* Judge Pérez–Giménez never ruled on either motion.

We first point out that the litigation in Criminal No. 02–98(PG) is only before us because Defendant has raised the issue. We play no role in adjudicating those matters and would never entertain *any* motion by the undersigned's spouse for *any* relief.

---

**3.** *United States v. Rivera Rangel,* 396 F.3d 476 (1st Cir.2005).

That defendant points to a scenario so unique and fact-specific is a strong indicator of why the present recusal motion, riddled at so many turns with similar speculation, fails. Indeed, given Defendant's frantic, and tenuous, invocation of such a voluminous list of recusal provisions, we cannot help but doubt his honest-to-goodness faith in any one of his own arguments; instead, we worry that he would simply like to have a different judge who he thinks, for whatever reason, may be, generally speaking, more defendant-friendly. We have found no grounds for recusal, and simply note that recusal motions should not be used as strategic devices to judge-shop.

### III.

### *Conclusion*

Defendant requests an evidentiary hearing to develop a record on: (1) the amount of fees received by the attorney from these two witnesses; (2) whether the income from her law practice contributes to the household income of the Chief Judge; and (3) discussions between the attorney and the Chief Judge about her representation of the witnesses, the fees paid to her, the fees owed to her, etc. Nothing learned in such a hearing would alter the statutory analysis and conclusions in this Order. Because the spouse is not counsel of record, or have an interest that could be affected by the outcome, or a material witness, we find that her involvement as counsel to two of the case's potential witnesses neither gives rise to a presumption that the undersigned's impartiality is compromised in fact, nor would a reasonable person believe that it might be. Therefore, we deny Defendant's motion requesting the undersigned's recusal and the case's reassignment to a different judge.

Should the decision not to recuse prove erroneous, it could impose an even greater delay on these proceedings than has already been suffered. Should the Defendant seek appellate review, the United States Court of Appeals for the First Circuit is urged to handle such petition on an expedited basis, in order to preserve this trial's September 25, 2006, start date, which has been scheduled so promptly at the First Circuit's specific request. *In re United States*, 441 F.3d at 68("[T]his criminal case is promptly to be reassigned to a different judge and set for trial.").

In accordance with the foregoing, we **DENY** Defendant's motion to recuse the undersigned pursuant to 28 U.S.C. §§ 455(a), 455(b)(5)(ii), 455(b)(5)(iii), and 455(b)(5)(iv).

**IT IS SO ORDERED.**